260 F.3d 142 (2nd Cir. 2001)
 JEFFREY D. SILVERSTEIN, AS EXECUTOR OF THE ESTATE OF MARVIN SILVERSTEIN, PLAINTIFF-COUNTER-DEFENDANT-APPELLANT,
v.
RITA CHASE AND JACK CHASE, DEFENDANTS-COUNTER-CLAIMANTS-APPELLEES, SMITH BARNEY, INC., DEFENDANT.
 Docket No. 00-7627
 UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
 Argued: December 15, 2000
Decided: Aug. 7, 2001
 
 1
 Jack Yoskowitz, New York, NY (Jeffrey D. Silverstein, New York, Ny, on the brief), for Plaintiff-Counter-Defendant-Appellant.
 
 
 2
 Norman I. Klein, New York, NY (Robert S. Getman, Carlet, Garrison & Klein, L.L.P., New York, Ny, on the brief), for Defendants- Counter-Claimants-Appellees.
 
 
 3
 Before: Feinberg, Parker, Circuit Judges, and Covello, District Judge.*
 
 Parker, Circuit Judge
 
 4
 On this appeal we must determine if the district court abused its discretion when it dismissed appellant's complaint with prejudice and, therefore, rendered appellees' counterclaims moot. Appellant Jeffrey Silverstein, the executor of his father Marvin Silverstein's estate, brought this action seeking partition of a brokerage account held in the name of Marvin Silverstein and Marvin's brother and sister, Edward Silverstein and Rita Chase, as tenants in common. Appellees, Rita Chase and her husband Jack Chase, counterclaimed alleging that, prior to his death, Marvin Silverstein had agreed to relinquish his interest in the brokerage account (then worth $100,000), to Rita Chase as reimbursement to her for money she spent on behalf of Morris Silverstein, who was Marvin and Rita's father. Rita claims one-third of the value of the account or $33,333 from the estate plus an additional amount of $5,800 for monies allegedly loaned to Marvin Silverstein. Pursuant to Fed. R. Evid. 804(b)(3), the district court, during a bench trial, held that the statements contained in a document entitled "Cancellation of Indebtedness" ("COI") were admissible. Although Marvin Silverstein did not sign the COI, the district court held that the document established that Marvin Silverstein did relinquish his interest in the securities at issue to his sister Rita Chase. Therefore, the district court dismissed the appellant's complaint and rendered appellees' counterclaims moot.
 
 
 5
 We conclude that the district court abused its discretion when it admitted the COI into evidence in its entirety. We therefore vacate the decision to dismiss the complaint and counterclaims. Despite this error by the district court, we also suggest, but do not decide, that a portion of the COI may be admissible pursuant to Fed. R. Evid. 807 or Fed. R. Evid. 803(15). Therefore, the case is remanded to the district court with instructions to (1) reinstate appellant's claim and appellees' counterclaims and (2) to retry the case, considering whether the portion of the COI that states "[w]e, Edward and Marvin Silverstein had agreed to reimburse Rita Silverstein Chase at the time of the settlement of the Morris Silverstein estate matter with Marion Silverstein" is admissible pursuant to Rule 807 or Rule 803(15).
 
 I. BACKGROUND
 
 6
 Jeffrey D. Silverstein, plaintiff-appellant, son of Marvin Silverstein, commenced this action as executor of the estate of Marvin Silverstein in an attempt to recover the interest of the decedent ("Marvin") in certain securities that were obtained by Marvin, his brother Edward Silverstein ("Edward"), and his sister Rita Chase ("Rita") from the estate of their father, Morris Silverstein ("Morris"). The securities were held by Marvin, Edward, and Rita as tenants in common.
 
 
 7
 According to the district court's findings of fact and consistent with the record, it is apparent that Rita spent approximately $100,000 on behalf of Morris before he died in 1989. After a stipulation was entered into in the Westchester County Surrogate's Court in 1991, the three children (Marvin, Edward, and Rita) received equal distributions from Morris's estate. Included in the distribution to the children were certain securities that the children were to own one-third each as tenants in common. These securities were deposited in a common account at Shearson Lehman (now Solomon Smith Barney). The account was registered in the names of Edward, Marvin, and Rita, as tenants in common, but only Rita's social security number and signature were listed with the account.
 
 
 8
 In an attempt to reimburse Rita for the money spent on behalf of their father, Edward, on or about May 21, 1992, assigned his one-third interest in the account to Rita in a document labeled "Cancellation of Indebtedness". The COI reads as follows:
 
 
 9
 We, Edward and Marvin Silverstein for ourselves, our heirs, and assigns do transfer all of our rights, title and interest, to our sister Rita Silverstein Chase, in the brokerage account number 359-07795-12-215, maintained as Tenancy in Common with or at Shearson Lehman Brothers at 2 Greenwich Plaza, Greenwich, CT. 06830.
 
 
 10
 We authorize our Financial Consultant Timothy F. Nuland to make such transfer on the books of Shearson Lehman Brothers, either to an account solely in the name of Rita Silverstein Chase or by deleting our names from the above said account or by any other method.
 
 
 11
 This transfer is made in recognition of the expenditures for labor and services made by Rita Silverstein Chase since October 1981, for our mutual interest, in the estate of our father Morris Silverstein.
 
 
 12
 We, Edward and Marvin Silverstein had agreed to reimburse Rita Silverstein Chase at the time of the settlement of the Morris Silverstein estate matter with Marion Silverstein.
 
 
 13
 This transfer is in consideration of the cancellation of all prior indebtedness and interest thereon owed by either of us to our sister Rita Silverstein Chase.
 
 
 14
 Although Marvin's name appears in the COI and is typed under the signature line, Marvin did not sign the document. In fact, Marvin did not show up on the day that both brothers were to sign the COI document. After Edward's assignment to Rita, two-thirds of the shares of stock in the common account were transferred to an account held by Rita.[1] The stock in controversy is the one-third that remained in the common account. Appellant does not challenge the fact that Rita owned two- thirds of the stock in the common account following Edward's transfer of his share to her.
 
 
 15
 The one-third remaining in the common account, which appellant claims belonged to Marvin, was transferred from "street name" into "certificate form" in or about June 1993.[2] In certificate form, this stock was held in the names of Marvin, Rita, and Edward as tenants in common. The common account in which it resides is apparently controlled by Rita. Appellant claims that the one-third remaining in the common account belonged to Marvin and that it should now be transferred to Marvin's estate.
 
 
 16
 The issue that we must address in this case is evidentiary. More specifically, we must determine whether the COI through which Edward transferred his one-third interest in the common account to Rita should be admissible to determine whether Marvin also relinquished his one-third interest to Rita. The district court considered the issue of the admissibility of the COI thoroughly. It concluded that the entire COI was admissible pursuant to Fed. R. Evid. 804(b)(3), and therefore the collateral statements included in the COI that affect the interest of Marvin were admissible as well. See Silverstein v. Smith Barney, Inc., No. 96 Civ. 8892 JSM, 2000 WL 420558, *5 (S.D.N.Y. April 18, 2000). The district court concluded that, based on the COI, Marvin intended to transfer his one-third interest to Rita. This is a diversity case, and this Court has jurisdiction pursuant to 28 U.S.C. § 1291.
 
 II. DISCUSSION
 
 17
 A. Did the district court abuse its discretion when it admitted the COI document in its entirety?
 
 
 18
 This Court reviews a district court's decision to admit evidence for an abuse of discretion. See Pescatore v. Pan Am. World Airways, Inc., 97 F.3d 1, 16 (2d Cir. 1996). Appellant does not challenge the admissibility of the COI for purposes of establishing that Edward transferred his interest in the common account to Rita. Appellant agrees that the COI meets the requirements of a statement against interest for Edward and thus, with respect to Edward, is admissible under an exception to the hearsay rule pursuant to Fed. R. Evid. 804(b)(3).[3] Appellant does challenge the admissibility of the collateral statements included in the COI that affect Marvin's interest in the common account. Therefore, in this case and in the context of Rule 804(b)(3), we must consider if collateral statements included in a statement against interest, which do not adversely affect the declarant (Edward), are admissible. The district court concluded that the entire COI was admissible, and therefore the collateral statements included in the COI that affect the interest of Marvin were admissible. See Silverstein, 2000 WL 420558, at *5. We disagree. In addition, it is necessary to address the residual hearsay exception (Fed. R. Evid. 807) and the hearsay exception for statements in documents affecting an interest in property (Fed. R. Evid. 803(15)).
 
 
 19
 1. Admissibility under Fed. R. Evid. 804(b)(3)
 
 
 20
 The admissibility of the COI for purposes of affecting Marvin's interest in the common account boils down to an analysis of the admissibility of collateral statements in statements against interest. The issue of the admissibility of collateral portions of statements against interest that affect a third party has been addressed by the Supreme Court in the context of a criminal case. See Williamson v. United States, 512 U.S. 594 (1994) (holding that the statement against interest exception to the rule against hearsay does not extend to collateral statements within a statement against interest even when those collateral statements are neutral as to interest). In Williamson, the Supreme Court described the basis for the statement against interest exception to the rule against hearsay as follows: "Rule 804(b)(3) is founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." Id. at 599. The Supreme Court also held that there is "no reason why collateral statements, even ones that are neutral as to interest,... should be treated any differently from other hearsay statements that are generally excluded." Id. at 600.
 
 
 21
 The district court concluded that the holding in Williamson should not control this case. See Silverstein, 2000 WL 420558, at *5. Appellees' argument on appeal as to Rule 804(b)(3) adopts the analysis of the district court. In addition, appellees argue that the circumstances surrounding this case weigh in favor of admissibility of the COI because the dangers that the hearsay rule seeks to eliminate are not present. These dangers are that the declarant might lie, he might misperceive the events that he relates, he might have a faulty memory, and his words might be misunderstood. See Williamson, 512 U.S. at 598. This analysis is sound as applied to Edward and the portions of the COI that are against his interest because he signed the document. However, the collateral statements in the COI that are against Marvin's interest are not against Edward's interest and thus are inadmissible under Rule 804(b)(3) because of Williamson. See id. at 600 (explaining that "the fact that a statement is collateral to a self-inculpatory statement says nothing at all about the collateral statement's reliability" and that collateral statements that are neutral as to the declarant's interest should not be treated differently from other generally excluded hearsay statements). Therefore, because we hold that the reasoning of Williamson applies in the present context and because the collateral statements in the COI are not against Edward's interest and do not become more reliable merely because they are collateral to admissions against Edward's interest, they are inadmissible under Rule 804(b)(3).
 
 
 22
 The district court differentiated this case from Williamson on the grounds that Williamson and its progeny involved the exclusion of collateral portions of statements against penal interest and this case involves collateral statements "contained in a statement solely against pecuniary interest that is offered in a civil trial." Silverstein, 2000 WL 420558, at *3.
 
 
 23
 The cases interpreting and applying Williamson include at least two civil trials. See Schimpf v. Gerald, Inc., 52 F. Supp. 2d 976, 985-86 (E.D. Wis. 1999) (involving alleged securities fraud); Ciccarelli v. Gichner Sys. Group, Inc., 862 F. Supp. 1293, 1298 & n. 3 (M.D. Pa. 1994) (involving alleged ERISA violation). In these cases, collateral statements in statements against pecuniary interest were held non- admissible. However, according to the district court and appellees, these cases differ from the one at hand because the statements against pecuniary interest in those cases were also against the penal interest of the declarant. The district court explained that Williamson is clearly applicable if a statement against pecuniary interest is also a statement against penal interest. In other words, in the district court's view Williamson applies only when a statement can be characterized as against the declarant's penal interest.
 
 
 24
 Appellant disputes that the statements in Ciccarelli implicated the declarant's penal interest. In Ciccarelli, the declarant "essentially admitted to actions that defrauded Raytheon." Ciccarelli, 862 F. Supp. at 1298. Appellant points to the court's ruling, which was based on the declarant's potential civil liability, as evidence that Ciccarelli applies the Williamson rule to a civil case involving only pecuniary interests. Regardless of the proper characterization of Ciccarelli, we disagree with the district court's conclusion that Williamson applies only when a declarant's penal interest is implicated and hold that the rationale of Williamson should be extended to cases where the declarant's pecuniary interest is at issue.
 
 
 25
 Here, the district court decided the present case by analyzing the Williamson opinion and deciding that the Justices did not give "any thought to [the] question whether the same rule should apply in the case of statements that are only against pecuniary interest." Silverstein, 2000 WL 420558, at *4.[4] In support of its conclusion, the district court relied on (1) the different motives that exist for declarants when their penal interests, as opposed to their pecuniary interests, are at stake and (2) the common law tradition of admitting collateral statements included in statements against pecuniary interest. See Silverstein, 2000 WL 420558, at *2, *5.
 
 
 26
 As for motive, a declarant may well use a declaration against pecuniary interest as a method of lying about another's actions just as in a declaration against penal interest. The rationale for the statement against interest exception to the rule against hearsay, see supra, is equally applicable in the context of statements against pecuniary interest. Because the justification for the exception is the same in either the penal or pecuniary context, the rule as to collateral statements contained in statements against pecuniary interest should not be different from the rule as to collateral statements in statements against penal interest.
 
 
 27
 As to the common law tradition of admitting collateral statements, the district court cited McCormick on Evidence and Wigmore on Evidence. Wigmore explains that "a general narrative may be admissible `not merely as to the specific fact against interest, but also as to every fact contained in the same statement.'" Silverstein, 2000 WL 420558, at *2 (quoting 5 John Henry Wigmore, Evidence § 1465, at 339 (J. Chadbourn rev. 1974)). Wigmore explains further that collateral facts in a statement against interest should be admissible because "the principle is that the statement is made under circumstances fairly indicating the declarant's sincerity and accuracy...." 5 John Henry Wigmore, Evidence § 1465, at 339 (J. Chadbourn rev. 1974). But see Mueller & Kirkpatrick, Evidence-Practice Under the Rules § 8.72, 1325 (1999) (explaining that "the Williamson Court's focus on textual interpretation and legislative meaning seems broadly applicable to civil cases too...."); John J. Capowski, Statements Against Interest, Reliability and the Confrontation Clause, 28 Seton Hall L. Rev. 471, 506 (1997) (explaining that "while much of the Court's analysis in Williamson is applicable to criminal cases, the holding applies equally to civil trials"). While Wigmore's analysis may support the appellees' contention that the COI should be admissible in its entirety, we decline to apply Wigmore's analysis in light of the Supreme Court's holding in Williamson.
 
 
 28
 Williamson concluded that "[t]he fact that a statement is self- inculpatory does make it more reliable; but the fact that a statement is collateral to a self-inculpatory statement says nothing at all about the collateral statement's reliability." Williamson, 512 U.S. at 600. This statement is equally applicable to statements against pecuniary interest. Also, Williamson focused on the word "statement" in Rule 804(b)(3) rather than on the type of interest being affected.[5] Because the Supreme Court focused its attention on how broadly "statement" should be defined, decided to define it narrowly, and did not differentiate between statements affecting different types of interests, we conclude that the Williamson rule should apply in this case. Further, we conclude that, although the particular motives of criminal suspects to implicate others may not often arise in cases involving only pecuniary interests, that does not mean that collateral statements in pecuniary interest cases are necessarily more reliable. Finally, Williamson indicates that each particular assertion in a narrative should be interpreted within the context of the circumstances under which it was made to determine if that assertion is in fact sufficiently against interest. See Williamson, 512 U.S. at 603-04 (explaining that all the surrounding circumstances must be considered to determine if a reasonable person would not have made the statement unless that person believed it to be true). Under this form of analysis as mandated by the Supreme Court, none of the portions of the COI that pertain to Marvin (and are therefore not against the declarant's interest) are admissible pursuant to Rule 804(b)(3). See United States v. Moskowitz, 215 F.3d 265, 268-69 (2d Cir. 2000) (per curiam) (explaining that portions of an allocution that were against declarant's penal interest may be admitted as long as the blame-shifting portions of the allocution were removed and the jury was given a limiting instruction). Therefore, we conclude that the district court erred in its interpretation of Rule 804(b)(3) and in its decision to admit the portions of the COI that are against Marvin's interest.
 
 2. Admissibility under Fed. R. Evid. 807
 
 29
 Fed. R. Evid. 807 is the residual exception to the rule against hearsay.[6] To be admissible under Rule 807, the evidence must be (1) trustworthy, (2) material, (3) more probative than other available evidence, and must fulfill (4) the interests of justice and (5) notice. See United States v. Harwood, 998 F.2d 91, 98 (2d Cir. 1993) (interpreting prior residual exception under Rule 803(24)). Appellees argue that, even if the COI is not admissible under Rule 804(b)(3), it should be admissible under the residual exception of Rule 807. The district court did not reach the applicability of Rule 807 because it decided that the COI was admissible under Rule 804(b)(3). On remand, the district court must consider whether Rule 807 applies. We suggest, but do not decide, that the following portion of the COI may be admissible pursuant to Rule 807: "We, Edward and Marvin Silverstein had agreed to reimburse Rita Silverstein Chase at the time of the settlement of the Morris Silverstein estate matter with Marion Silverstein." This portion of the COI appears to bear on Edward's motive when he signed the COI. Specifically, it suggests that he relinquished his right to his portion of the common account, in part, because he believed that Marvin would also be relinquishing his share of the common account. However, because the district court did not address Rule 807 or the admissibility of various affidavits presented by the parties, we leave the decision regarding admissibility under Rule 807 to the district court on remand.
 
 
 30
 3. Admissibility under Fed. R. Evid. 803(15)
 
 
 31
 Rule 803(15) creates an exception to the rule against hearsay for:
 
 
 32
 A statement contained in a document purporting to establish or affect an interest in property if the matter stated was relevant to the purpose of the document, unless dealings with the property since the document was made have been inconsistent with the truth of the statement or the purport of the document. Fed. R. Evid. 803(15).
 
 
 33
 Appellees argue that even if the COI is inadmissible under Rules 804(b)(3) and 807, it should be admissible under Rule 803(15). The requirements for admissibility under Rule 803(15) are that the document is authenticated and trustworthy, that it affects an interest in property, and that the dealings with the property since the document was made have been consistent with the truth of the statement. See United States v. Weinstock, 863 F.Supp. 1529, 1534 (D. Utah 1994); Jack B. Weinstein, Weinstein's Federal Evidence § 803.20 (Joseph M. McLaughlin ed., 2d ed. 1999). Because the district court did not consider Rule 803(15), we leave it to the district court to do so on remand.
 
 III. CONCLUSION
 
 34
 For the foregoing reasons, we hold that the district court abused its discretion when it admitted the COI into evidence in its entirety. Therefore we vacate the district court's order and remand for further proceedings not inconsistent with the contents of this opinion. Specifically, we remand with instructions to reinstate the appellant's claim and the appellees' counterclaims and to retry the case considering the admissibility of the COI or portions thereof under Fed. R. Evid. 807 and Fed. R. Evid. 803(15).
 
 
 
 NOTES:
 
 
 *
 The Honorable Alfred V. Covello, Chief Judge of the United States District Court for the District of Connecticut, sitting by designation.
 
 
 [1]
 The two-thirds of the shares of stock that were transferred were made up of the one-third owned by Rita and the one-third formerly owned by Edward.
 
 
 [2]
 It is unclear from the record why or how this transfer occurred.
 
 
 [3]
 Rule 804(b)(3) allows admission, despite the declarant's unavailability as a witness, of [a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.
 
 
 [4]
 Because the Justices did not address whether the Williamson rule should apply to statements against pecuniary interest, the district court concluded that it was not bound by Supreme Court precedent and, thus, was able to find the entire COI admissible. We believe the better view is that Williamson was a case interpreting Rule 804(b)(3), which is not context specific, and therefore the Williamson rule should apply to all statements against interest.
 
 
 [5]
 The Supreme Court decided that "statement" refers to a "single declaration or remark" and not to an entire "report or narrative." Williamson, 512 U.S. at 599.
 
 
 [6]
 Rule 807 of the Federal Rules of Evidence, states that: A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.