06-1190-cr
United States v. Mundy

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: January 15, 2008                    Decided: August 21, 2008)

Docket No.  06-1190-cr

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,

*Appellee*,

v.

NICO D. MUNDY,

*Defendant-Appellant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before: KEARSE, LEVAL, CABRANES, *Circuit Judges*.

Defendant appeals his conviction in the United States District Court for the Western District of New York (Siragusa, *J.*) for drug and firearm offenses on the grounds that the court erred in refusing to instruct the jury concerning the flight of a co-defendant.  Affirmed.

JOSEPH J. KARASZEWSKI, Assistant United States Attorney, United States Attorney's Office for the Western District of New York, Buffalo, New York (Terrance P. Flynn, United States Attorney for the Western District of New York, on the brief), for *Appellee*.

BOBBI C. STERNHEIM, Law Offices of Bobbi C. Sternheim, New York, New York, for *Defendant-Appellant*.

LEVAL, *Circuit Judge*:

Defendant Nico Mundy appeals from the judgment of the United States District Court for the Western District of New York (Siragusa, *J.*) convicting him, after trial by jury, of possession of marijuana with intent to distribute, 21 U.S.C. § 841(a), and possessing a firearm in the furtherance of a drug crime, 18 U.S.C. § 924(c). Mundy contends the court erred in refusing to instruct the jury that the attempted flight of co-defendant Fabian McDonald supported an inference of McDonald's consciousness of guilt. We reject the contention that this was error and affirm the judgment of the district court.

## BACKGROUND

The trial evidence, viewed in the light most favorable to the government, *see United States v. Mapp*, 170 F.3d 328, 331 (2d Cir. 1999), showed the following.

On July 14, 2004, officers of the Rochester, New York, Police Department, together with officers of other law enforcement agencies, executed search warrants at two Rochester apartments. In one of the apartments, they found the appellant, Nico Mundy, in the living room and Fabian McDonald in the bathroom. Eighteen pounds of marijuana, some packaged into small quantities, were found in the bedroom, together with a loaded shotgun beneath the bed. A handgun was found in a closet, which contained primarily stereo equipment. A fingerprint of Mundy was later found on the handgun. When the police entered, McDonald attempted to flee through a window, but was arrested. Mundy also put his upper body out the same window, but he came back inside when the officer pointed a gun at him. Various documents were found, which connected Mundy to the apartment, including a Federal Express box addressed to him at the apartment building. The building's landlord testified that Mundy had been paying rent on the apartment for several years.

Both Mundy and McDonald were indicted. While on bail pending trial, McDonald absconded, so that Mundy was tried alone. Central to Mundy's defense was that he was no longer residing at the apartment at the time of the arrest, but in a different house that he owned, where he lived with his mother.

Mundy introduced evidence that he had formerly lived in the apartment but had moved out, subletting it to a friend, who in turn had sublet it to Fabian McDonald. He continued to pay rent on this apartment in order to have a place to store his stereo equipment because he spent a lot of time working as a disc jockey. The heart of Mundy's defense was that the drugs belonged not to him, but to the subtenant, McDonald.

In support of this defense, Mundy requested a jury charge to the effect that McDonald's attempt to flee from the apartment when the police entered supported an inference of his conciousness of guilt. The district court refused to give the instruction.

Mundy was found guilty, and was sentenced to seventy-five months imprisonment.

## DISCUSSION

Mundy contends the court erred and denied him a fair trial in refusing to instruct the jury that it could infer McDonald's conciousness of guilt from his attempt to flee when the police entered the apartment. The district court gave two related reasons for denying the requested instruction. First, the court observed, "[E]ven innocent people flee." The court then added, "Surely you [defense counsel] can comment on the fact . . . ." Mundy claims it was error to decline to give the instruction. We disagree. Whether to charge the jury on drawing an inference of a guilty mind from flight lies in the trial judge's discretion. It is not error for the court to decline to give the charge. Furthermore, we think there are substantial reasons, summarized in

3

this case by the district judge, which might justify a court's reluctance to give such an instruction, at least where the request for the instruction is objected to.[1]

Reviewing the district court's reasons, first, as is often the case with circumstantial evidence, evidence of a set of circumstances may support a number of possible inferences. Mundy wanted the judge to instruct the jurors that Fabian McDonald's attempt to flee through the window when the police entered showed his consciousness of guilt for possession of the drugs and guns in the apartment. Without question that is one possible inference from his actions, but there are others as well. Another might be that, if McDonald was an innocent visitor in Mundy's apartment who knew that Mundy dealt in drugs and kept guns there, McDonald might well have feared the false appearance of guilt that would arise from his being found in an apartment where drugs and guns were kept. In addition, McDonald might have had other reasons, unrelated to the charges in this case, for wanting to avoid the police. It has been understood for over a century that "[t]here are so many reasons for [flight], consistent with innocence, that it scarcely comes up to the standard of evidence tending to establish guilt." *Hickory v. United States*, 160 U.S. 408, 417 (1896) (internal quotation marks omitted). If facts before the jury give plausible support to various possible inferences and an objection is made to the charge, there are strong reasons why the court might decline to give its imprimatur to one possible inference, as opposed to others.

Instructions on flight that this court has upheld seek to deal with the problem by

---

[1] As the district court observed, the charge is more commonly given at the request of the government with respect to inferences of consciousness of guilt to be drawn from flight by the defendant. Our observations about the charge apply with equal force regardless whether the charge is requested by the government with respect to the defendant's flight or by the defense with respect to the flight of some other person.

4

mentioning the existence of other possible inferences.  For example, in the instruction presented by a leading treatise, after telling the jury that the flight of the defendant "may tend to prove that the defendant believed that he was guilty," the instruction goes on to say that "flight may not always reflect feelings of guilt."  *See* 1 L. Sand, et al., *Modern Federal Jury Instructions - Criminal* § 6.05 (2007) (citing as authority *United States v. Amuso*, 21 F.3d 1251, 1259-60 (2d Cir. 1994)); *see also United States v. Ramirez*, 894 F.2d 565, 571 (2d Cir. 1990); *United States v. Castro*, 813 F.2d 571, 578 (2d Cir. 1987).  Nonetheless, even in this more balanced form, the instruction gives higher prominence to the inference of consciousness of guilt than to other competing inferences, as these are vaguely alluded to but are not spelled out.  Even when the instruction so seeks balance by mentioning the existence of other possible inferences, it may be questioned whether the court should endorse one possible inference more strongly or more explicitly than others, especially when the others are no less logical.  *Cf. United States v. Kahaner*, 317 F.2d 459, 479-80 & n.12 (1963) (Friendly, *J.*) (noting that when a trial court marshals the evidence for the jury, it inevitably will include some matters and exclude others, appearing inappropriately to give court endorsement to certain views of the evidence as opposed to others).

An equally important reason for rejecting the requested instruction was the court's second reason, which it summarized by telling Mundy's lawyer, "Surely you can comment on the fact . . . ."  By this terse response, we understand the court to have meant that the inferences to be drawn from the evidence are more appropriately communicated to the jury by counsel in summation than by the judge's instruction on the law.   We agree entirely; the main purpose of the jury instruction is to inform the jury of the correct legal standard and on the applicable rules of law.  *See United States v. Bok*, 156 F.3d 157, 160 (2d Cir. 1998).

Whether inferences should be drawn from the evidence, and if so, which inferences, are matters of logic and experience – not of law.[2] Absent unusual circumstances, what inferences are suggested, or conclusively established, by the evidence are matters to be argued to the jury by counsel. Courts do not instruct the jurors that because witness X testified that she saw the defendant rob the bank, the jury can appropriately find that the defendant robbed the bank. Nor do they tell jurors that the discovery of the defendant's fingerprint on the bank door after the robbery supports the inference that the defendant was at the bank on the day of the robbery. In contemporary administration of justice, what conclusions should, or should not, be drawn from the evidence are generally left to counsel to argue. It may well be argued that the inferences to be drawn from flight should be treated no differently, at least where one side objects to the instruction. *Cf. Fenelon v. State*, 594 So. 2d 292, 294 (Fla. 1992) ("[W]e can think of no valid policy reason why a trial judge should be permitted to comment on evidence of flight as opposed to any other evidence adduced at trial.").

Absent special circumstances, where there is an objection to the request for the instruction, it is not clear to us that any benefit from the giving of the instruction outweighs the potential harms. As for benefits, the court possesses no special learning or expertise on the interpretation of human behavior. If there is special learning to be had on those issues, such learning is part of another discipline and is not part of an education in law. Jurors are no less well equipped than the

---

[2] Our court (like others) has ruled that when "the facts surrounding th[e] flight" support the inference, proof of flight may be received as evidence of consciousness of guilt. *See, e.g.*, *United States v. Salameh*, 152 F.3d 88, 157 (2d Cir. 1998). This is not however a special rule of law but rather one of an infinite number of applications of the general principle that evidence is relevant if it tends to support an inference that is pertinent to the factual issues in the case. *See* Fed. R. Evid. 401.

judge to decide whether, in the circumstances of the case, flight should be considered indicative of consciousness of guilt. In most cases, the jurors are fully capable, without the judge's help, of evaluating the evidence and the arguments made by counsel about whether such an inference should be drawn from it. Given that counsel are free to argue to the jury for and against any inference to be drawn from the fact of flight, it is not clear that the jury is benefitted by hearing the court's instruction on the subject.

As for the potential for harm, trial judges wield great influence over juries. As noted above, what thoughts or fears may have prompted Fabian McDonald to try to flee is unclear and open to debate. By instructing the jurors about one inference to be drawn from the conduct, without giving equal prominence to other possible inferences, the judge risks unwittingly to take sides in the case and to influence the jury on the finding of the verdict.

For these reasons, at least three federal circuits discourage the practice of giving flight instructions. *See United States v. Robinson*, 475 F.2d 376, 384 (D.C. Cir. 1973) ("The interest of justice is perhaps best served if this matter is reserved for counsel's argument, with little if any comment by the bench."); 9th Cir. Manual of Model Crim. Jury Instructions § 4.20 (2003) (approved Jan. 2007); Pattern Crim. Fed. Jury Instructions for the 7th Cir. § 3.20 (1998) (approved Nov. 1998); *see also* 22 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5181 (2008) ("In most cases, the question . . . can be safely left to the argument of counsel and the good sense of the jury."). Many states either forbid or strongly discourage giving flight instructions. *See, e.g.*, *Fenelon*, 594 So. 2d at 294; *Renner v. State*, 397 S.E.2d 683, 685-86 (Ga. 1990); *Dill v. State*, 741 N.E.2d 1230 (Ind. 2001); *State v. Hall*, 991 P.2d 929, 937 (Mont. 1999);*State v. Reed*, 604 P.2d 1330, 1333 (Wash. Ct. App. 1979).

We recognize that it has not been unusual over the years for the district courts of this circuit to give instructions on flight, usually on the request of the government, relating to flight by the defendant, and that our circuit has ruled a number of times that the giving of such an instruction is not error. *See, e.g.*, *Ramirez*, 894 F.2d at 571. Our rulings upholding such instructions, however, have not proclaimed their worth or importance. We have said little more than that the instruction was not error. *See, e.g.*, *id.* ("[W]e think the charge was 'sufficiently balanced . . . to enable the jury to consider the issue fairly.'" (quoting *Castro*, 813 F.2d at 578 (2d Cir. 1987)).

It appears that the giving of a flight instruction is a vestige of the late nineteenth and early twentieth centuries, when it was common practice for judges to summarize and comment upon the evidence generally. *See Quercia v. United States*, 289 U.S. 466, 469-71 (1933) (outlining comment power of the judge and its limits). *See generally* 21A Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence 2d* §§ 5081-5082 (2008) (recounting the historical use of the comment power by judges). For good reason, that practice has fallen into widespread disfavor, absent special circumstances. Judges cannot marshal the evidence without exercising their own judgment on how evidence should be described, which aspects should be stressed, which aspects ignored. In doing so, courts inescapably influence the jury on decisions which should be in the jury's sole province. *See, e.g.*, *Kahaner*, 317 F.2d at 479-80 & n.12.[3]

---

[3] We do not imply that it is always ill advised to marshal the evidence. There are undoubtedly circumstances in which the practice serves justice valuably, especially where it assists the jury to compartmentalize evidence in complex cases, including how the evidence relates differently to different parties. *See, e.g.*, *United States v. Kelly*, 349 F.2d 720, 756-57 (2d Cir. 1965); Jack B. Weinstein, *The Power and Duty of Federal Judges to Marshall and Comment on the Evidence in Jury Trials and Some Suggestions on Charging Juries*, 118 F.R.D. 161, 162 (1988) (arguing that federal judges should comment and sum up in appropriate circumstances such as "complex and technically oriented trials which are difficult for juries to follow").

Especially in a criminal trial, in which the defendant often declines to present evidence, the court's marshaling of the evidence often amounts substantially to a repetition of the prosecutor's summation. Today, marshaling of evidence is rarely practiced in federal court. *See* 21A Wright & Graham §§ 5081, 5082.4. A majority of states bar judges from commenting upon the evidence, and a plurality of states bar them from summing up the evidence as well. *See id.* at §§ 5081.1, 5082.1. In light of these changed practices, court instructions to the jury on inferences to be drawn from flight may be an anomaly. The mere fact that a practice has existed in the past is not necessarily sufficient reason for its continuation.

We nonetheless recognize that in some circumstances the party that opposes drawing the inference of consciousness of guilt from flight may welcome a balanced version of the charge because it gives court approval to the proposition that flight does not necessarily result from consciousness of guilt. Where, for example, the government requests such a charge relating to the defendant's own flight, the defendant may well not object, believing that the jury may be too easily swayed by the prosecutor's argument on the issue, and that the defendant is better protected if the court gives a balanced instruction, giving official sanction to the proposition that flight can be attributable to other reasons. (Indeed it is conceivable that the defendant may request the giving of the balanced charge.) Accordingly, where the party opposing the inference of consciousness of guilt does not object to the giving of the charge, we see no reason for the court not to give it. It is where that party does object that we urge courts to think carefully whether the charge serves a useful and proper purpose or whether it simply gives court imprimatur to one side's factual contention.

In this case, we have no occasion to consider whether the giving of the instruction would be error. Judge Siragusa wisely, in our view, declined to give it. The defendant contends the

9

refusal to give the charge was error. We disagree. The refusal to give the charge was not error.

We have discussed the issue further, in dictum, to encourage district courts, when faced with a request for such an instruction and an objection, to think carefully on whether any benefit from the giving of the charge would outweigh the potential harms we have discussed.

**CONCLUSION**

The judgement of the district court is AFFIRMED.