09-0978-cr
United States v. Ballard

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 4th day of August, two thousand ten.

PRESENT:
> PIERRE N. LEVAL,
> BARRINGTON D. PARKER,
> PETER W. HALL,
> > *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                                            No. 09-0978-cr

ANTHONY STEELE, also known as Fat Boy,
also known as Tone,

> *Defendant,*

ZACHARY BALLARD, also known as Little Zachary,
also known as Boobie, also known as Zachary Balard,

> *Defendant-Appellant.*

_____

1

FOR APPELLEE:                    BENJAMIN NAFTALIS  (Rebecca Monck
                                 Ricigliano, Michael A. Levy, of counsel), Assistant
                                 United States Attorneys, for Preet Bharara, United
                                 States Attorney for the Southern District of New
                                 York, New York, NY.


FOR DEFENDANT-APPELLANT:          LAWRENCE MARK STERN, New York, NY.


Appeal from a judgment of the United States District Court for the Southern District of

New York (Rakoff, *J.*).  **UPON DUE CONSIDERATION**, **it is hereby ORDERED,**

**ADJUDGED, AND DECREED**, that the judgment of the district court is **AFFIRMED**.

In June 2008, Defendant-Appellant Zachary Ballard ("Ballard") was indicted on seven

counts of violating Title 18: one count of participating in a conspiracy to commit armed robbery,

in violation of 18 U.S.C. § 1951; three counts of committing armed robbery, in violation of 18

U.S.C. §§ 1951, 1952; and three counts of using, carrying, or possessing a firearm during and in

relation to a crime of violence, in violation of 18 U.S.C. § 924(c).  In July 2008, a jury found

Ballard guilty on all seven counts and, in February 2009, the district court sentenced Ballard

principally to a term of 601 months' imprisonment.  Ballard challenges portions of the evidence

adduced during his trial, certain decisions of the district court, the length of his sentence, and the

effectiveness of his trial counsel.  We assume the parties' familiarity with the facts, procedural

context, and specification of appellate issues.

A.    Photographic Arrays

Ballard first argues that his due process rights were violated due to the spoliation of

evidence of possible suggestive identification procedures and that, as a result, the evidence of the

identifications at trial should have been suppressed. As we set forth in *Raheem v. Kelly*, 257 F.3d 122 (2d Cir. 2001), "[d]ue process requires that criminal trials proceed consistently with that fundamental fairness which is essential to the very concept of justice. When the prosecution offers testimony from an eyewitness to identify the defendant as a perpetrator of the offense, fundamental fairness requires that that identification testimony be reliable." *Id.* at 133 (internal quotation marks and citations omitted); *see also Manson v. Brathwaite*, 432 U.S. 98, 114 (holding that "reliability is the linchpin in determining the admissibility of identification testimony"); *Watkins v. Sowders*, 449 U.S. 341, 347 (1981) ("It is the reliability of identification evidence that primarily determines its admissibility . . . .").

As to Ballard's spoliation claim, we agree with the Government that, even assuming that there was an obligation to preserve the evidence of the earlier photographic arrays, there is nothing in the record suggesting that the NYPD failed to keep a record of them. There is similarly no indication that the evidence was "intentionally destroyed." *See Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001); *see also In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 148 (2d Cir. 2008) ("Even if the government had been under an obligation to preserve the tapes, [appellant] has pointed to no evidence that the tapes were intentionally destroyed, and therefore the destruction of the tapes could not have amounted to spoliation."). The extent of Ballard's support for this claim is Detective Puskas's trial testimony that, contrary to the testimony of several of the victims, the victims did not look at photos on a computer screen.

From this sliver of testimony, Ballard argues that there is a suggestion of bad faith. We disagree. First, Detective Puskas's testimony carefully circumscribed his knowledge of the photographic arrays. In response to a question whether he had ever seen the photos shown to the victims at the precinct, he replied, "No." In response to a question about whether there was ever a list compiled containing the names of the other people appearing on the array, he replied, "To the best of my knowledge, no." In other words, he testified only as to what he knew. Perhaps more to the point, Detective Puskas repeatedly testified that when he personally showed the victims multiple arrays, he never showed Ballard's picture more than once. With this limited record evidence supporting Ballard's spoliation claim, we cannot—and do not—draw an inference that the information he now seeks was intentionally destroyed.

As to Ballard's claim that the identification should have been suppressed, which we review for abuse of discretion, *see Silverstein v. Chase*, 260 F.3d 142, 145 (2d Cir. 2001), we are not convinced that the pretrial identification procedures, even if they occurred as Ballard speculates they might have, unduly and unnecessarily suggested that he was the perpetrator. "If the procedures were not suggestive, the identification evidence presents no Due Process obstacle to admissibility." *Raheem*, 257 F.3d at 133. First, we agree with the district court that a proper foundation was laid for admission of the evidence. Ballard was free to argue to the jury during cross-examination and summation that the evidence was weak and ought not be credited. Second, the witness as to whose testimony Ballard objected, Christopher Altragracia, an employee at the Storage Deluxe warehouse that was robbed on October 7, 2007, explicitly testified that he recognized the pictures of Ballard and his co-defendant from the robbery itself:

4

Q:    And what does your signature represent on 22 and 23?

A:    The people who looked familiar to me.

Q:    Familiar in what way, sir?

A:    Familiar to the people who robbed me at the store.

Finally, even if it was error to admit identification evidence based on the photo arrays, the error was in all likelihood harmless due to the number of other eyewitnesses who identified Ballard in court. In other words, the Government's case did not rely solely on Altragracia or the other witnesses who identified Ballard after viewing the photo arrays. *See United States v. Garcia*, 413 F.3d 201, 217 (2d Cir. 2005) (holding that erroneous admission of evidence was harmless where it "had no substantial and injurious effect or influence on the jury verdict," judged in relation to the total evidence on the issue in question (internal quotation marks omitted)).

We therefore conclude that there is no merit to Ballard's claim of spoliation or his claim that the evidence was unduly suggestive so as to constitute a violation of the Due Process Clause.

B.    Section 924(c)

Ballard next claims that his convictions on Counts Three, Five, and Seven of the Indictment, the firearm charges brought under 18 U.S.C. § 924(c), should be vacated because there was insufficient evidence as to the "firearms" used during the robberies and because the district court failed to charge the jury on that element of the offense. Neither contention has merit.

A defendant challenging the sufficiency of the evidence "bears a heavy burden," *United States v. Aguilar*, 585 F.3d 652, 656 (2d Cir. 2009), because a reviewing court must sustain the

5

jury's guilty verdict if "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "Under this stern standard, a court, whether at the trial or appellate level, may not usurp the role of the jury by substituting its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *United States v. MacPherson*, 424 F.3d 183, 187 (2d Cir. 2005) (citations omitted) (internal quotation marks omitted) (brackets and ellipsis omitted).

Section 924(c) criminalizes using or carrying a firearm during the commission of a crime of violence and section 921(a)(3) defines "firearm" as "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. § 921(a)(3). Ballard asserts that the evidence before the jury, testimony that the victims claimed the robbers had "guns," is insufficient as far as proving that the robbers had "firearms," as so defined by Title 18. We rejected this argument in *United States v. Jones*, 16 F.3d 487 (2d Cir. 1994).[1] In *Jones*, the defendant-appellant contended that "[b]ecause none of the eyewitnesses knew anything about firearms, . . . their descriptions were insufficient to establish that the weapon was a real gun rather than a toy or other replica." *Id.* at 490. We concluded that testimony by lay witnesses agreeing on the description of the firearm was sufficient, and that it was for the jury to determine whether the government had met its burden of proof. *Id.* at 490-91. *See also United States v. Brewer*, 36 F.3d 266, 270-71 (2d Cir. 1994). The

---

[1] Jones's conviction was vacated on grounds not relevant to the instant case. *See Jones*, 16 F.3d at 493.

facts in the instant case are on all fours with our precedent, and we therefore reject Ballard's contention as to the sufficiency of the evidence.

Regarding Ballard's claim that the jury should have been charged on the firearm element of section 924(c), we apply a plain error review since he acknowledges that he did not request such a charge and did not object when no charge was given. *See United States v. Needham*, 604 F.3d 673, 678 (2d Cir. 2010). Ballard cites no cases—and we have found none—where a court has required a jury to be charged on the specific definition of "firearm." We decline to so hold today because any omission was harmless, given the broad statutory definition of "firearm" and the ample eyewitness testimony before the jury.

C.      Ballard's flight

Ballard next argues that the district court improperly admitted evidence of his flight from the NYPD officers and Bureau of Alcohol, Tobacco, Firearms, and Explosives agents who attempted to arrest him at his apartment in Brooklyn, NY, in November 2007. His claims are without merit.

We review for abuse of discretion a district court's decision to admit flight evidence. *See United States v. Al-Sadawi*, 432 F.3d 419, 424 (2d Cir. 2005). While it is well-settled that flight can, in some circumstances, evidence consciousness of guilt, a satisfactory factual predicate must exist before such evidence may properly be admitted. *See id.* In *Al-Sadawi*, we held that the admissibility of flight evidence depends on the degree of confidence with which we may draw four inferences: "(1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and

7

(4) from consciousness of guilt concerning the crime charged to actual guilt of the crime

charged." *Id.* (internal quotation marks omitted). Only the third inference is relevant here.

Ballard argues that there was an alternative explanation for his flight, to wit, that he had

missed a meeting with his parole officer two days earlier. The district court admitted the

evidence of flight after considering this alternative explanation:

| The Court: | You think that a reasonable jury could infer that the reason he escaped out the back, drops three floors, and then ran was because he thought he was in trouble for violating his—for failing to appear at a probation meeting? |
|---|---|
| Mr. Geduldig: | There may have been other violations he was aware of, I don't know. |
| The Court: | I think, without suggesting that you can't make that argument if you wish to introduce all the background that will allow you to make that argument, I think that is on its face far less probable than the government's view. And so I will allow the government to open on that. |

We conclude that the district did not abuse its discretion in allowing the jury to hear evidence of

flight. The evidence was not improperly ambiguous in spite of the fact that twenty days had

passed since the last robbery and the fact that the arresting officers and agents did not have a

chance to inform Ballard of the charges before he fled.[2] Indeed, by inviting Ballard's counsel to

---

[2] Ballard cites cases that stand for the general proposition that "evidence of flight or related conduct is only marginally probative as to the ultimate issue of guilt or innocence." *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977) (internal quotation marks omitted). Even so, "[i]t is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." *Id.* (internal quotation marks omitted).

8

introduce the background to the alternative explanation for flight, the district court abided by this Court's precedent. In *United States v. Amuso*, 21 F.3d 1251 (2d Cir. 1994), we wrote:

> The fact that a defendant's flight is subject to varying interpretations does not lead inevitably to the conclusion that the district court abused its discretion in admitting flight evidence. Where the evidence passes the threshold inquiry of relevance, the accepted technique is for the judge to receive the evidence and permit the defendant to bring in evidence in denial or explanation. While trial judges should be aware of the limitations of flight as circumstantial evidence of guilt, the threshold decision on whether to admit such evidence in a particular case falls within the judge's sound discretion, and will be disturbed only when that discretion is abused.

*Id.* at 1258 (citations omitted) (internal quotation marks omitted) (alterations omitted). Thus, the evidence was properly admitted.

Ballard also argues for the first time on appeal that the prejudice would have outweighed the probative value if he had disclosed to the jury the alternative explanation of flight. We review this claim for plain error, *see United States v. Dupes*, 513 F.3d 338, 343 (2d Cir. 2008), and reject it for lack of merit. Ballard cites no authority supporting the proposition that the district court should preclude the Government from introducing probative evidence of guilt on the basis that defendant's proposed defense would require him to prejudice himself. Indeed, the Government itself adduced no evidence either of the fact that Ballard was on parole or of what his underlying crimes were. Our case law, as cited above, indicates that "the accepted technique is for the court to receive the evidence and permit the defendant to bring in evidence in denial or explanation." *Amuso*, 21 F.3d at 1258 (internal quotation marks omitted). It was not error, let alone plain error, for the district court to have done just that.

9

Finally, Ballard claims the district court erred by not giving the jury a specific charge on flight, an instruction that he himself did not request. We disagree. In *United States v. Mundy*, 539 F.3d 154 (2d Cir. 2008), we stated that "[f]or good reason, th[e] practice [of court instructions to the jury on inferences to be drawn from flight] has fallen into widespread disfavor, absent special circumstances." *Id.* at 158. Given that neither party requested an instruction, we conclude that it was well within the district court's discretion—and certainly not plain error—to opt not to give an instruction to the jury regarding Ballard's flight. *Id.* at 156 ("Whether to charge the jury on drawing an inference of a guilty mind from flight lies in the trial judge's discretion.").

D.      The Duane Reade robbery

Ballard next argues, for the first time on appeal, that the district court improperly admitted evidence of an uncharged robbery. We review for plain error, *see Dupes*, 513 F.3d at 343, and conclude that it was not plain error for the district court to have admitted the evidence as probative evidence of Count One of the Indictment, conspiracy to commit robbery. Although Ballard asserts that no witnesses to the Duane Reade robbery identified Ballard as the second suspect—employee Michael Gray was able to identify only Anthony Steele, Ballard's co-defendant— it was nevertheless proper to admit the evidence on the basis that it fit the pattern of charged robberies and thus was relevant because it tended to make it more likely than not that Ballard had engaged in a robbery conspiracy with Steele. *See* Fed. R. Evid. 401.

Evidence of the Duane Reade robbery was not "other crimes" evidence, which may not be admitted "to prove the character of a person in order to show action in conformity therewith,"

10

Fed. R. Evid. 404(b), because "the evidence of which [Ballard] complain[s] was not evidence of 'other' crimes. When the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself." *United States. v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994). In this case, the Duane Reade robbery fit the pattern of the three charged robberies in that a pair of African-American males wearing hooded sweatshirts, one of whom was Steele, entered the store in the morning, demanded to speak to the manager, ordered the employees to lie down on the floor, gained access to the safe, and then told the employees to count to twenty as they left the store.

Although Ballard attacks the "fit" of the Duane Reade robbery with the three charged robberies, his claims amount to a trial argument. At trial, upon admission of the evidence, he was free to argue that the evidence should not carry significant weight due to the fact that Ballard himself was not identified by witnesses to that crime. The fact that he is able to make an argument regarding the weight of the evidence does not mean that the evidence should have been precluded altogether.

In sum, we cannot conclude either that the evidence lacked probative value or that Ballard was unfairly prejudiced by its admission. *See United States v. Jimenez*, 789 F.2d 167, 171 (2d Cir. 1986) (observing that evidence is not unfairly prejudicial simply because it is "harmful" to defense). Nothing in the record suggests a "likelihood that jurors would render a decision on an improper basis by giving this testimony undue weight." *United States v. Kaplan*, 490 F.3d 110, 122 (2d Cir. 2007). We conclude, therefore, that the district court did not commit plain error in admitting the evidence.

11

E.       The sleeping juror

Ballard next argues that he was denied his right to due process because the district court did not remove a juror it observed on several occasions to have fallen asleep. Ballard did not raise this issue below and, therefore, we review for plain error. *See Dupes*, 513 F.3d at 343. While the fact of a sleeping juror admittedly gives us pause, we conclude that it was not plain error for the district court to choose not to remove the juror.

On July 16, 2008, the third day of trial, the district court called a sidebar and explained to counsel that he had noticed that a juror had been sleeping "[a]t various times throughout the trial [] including now." Counsel discussed taking two-minute breaks but did not ask the court to remove the juror. The court stated: "I would not, except in the most extreme circumstances, discharge a juror for sleeping unless they were sleeping through the entire evidence. On the other hand, if either side wishes the juror discharged, I would seriously consider that." The trial continued and there is nothing in the record indicating that the juror was caught sleeping again.

A trial judge's handling of juror misconduct and his decisions on a jury's impartiality are normally reviewed for abuse of discretion. *United States v. Cox*, 324 F.3d 77, 86 (2d Cir. 2003); *United States v. Gaggi*, 811 F.2d 47, 51 (2d Cir. 1987); *see also United States v. Abrams*, 137 F.3d 704, 708 (2d Cir. 1998). This is because the trial judge is in a unique position to ascertain an appropriate remedy, having the privilege of "continuous observation of the jury in court." *United States v. Panebianco*, 543 F.2d 447, 457 (2d Cir. 1976). We conclude that the district court did not abuse its discretion, much less commit plain error, in retaining the juror. On the contrary, it is evident from the trial transcript that the court carefully observed the juror and

12

brought the situation to the attention of the parties. Neither party objected to the district court's

actions, and we infer from the court's diligence that it continued to monitor the juror. Although

Ballard now claims that any objection would have been futile, that assertion is clearly

contradicted by the record. Ballard's due process claim is without merit. *See United States v.*

*Diaz*, 176 F.3d 52, 78 (2d Cir. 1999) (finding no abuse of discretion because the district court

"from the moment the sleeping juror allegation was raised, investigated the matter and carefully

observed the juror in question throughout the trial.").

F.      Rebuttal summation

Ballard next argues that his counsel was improperly accused of deception during the

Government's rebuttal. As this argument was not raised in the lower court, we review for plain

error, *see Dupes*, 513 F.3d at 343, and we find none.

We will not reverse a criminal conviction arising from an otherwise fair trial solely on the

basis of inappropriate prosecutorial comments. Rather, we will reverse only if we conclude,

based on the context of the trial as a whole, that the prosecutor made improper remarks that

resulted in substantial prejudice. *See United States v. Thomas*, 377 F.3d 232, 244 (2d Cir. 2004).

We look at three factors when considering whether an improper comment prejudiced a

defendant: (1) the severity of the misconduct; (2) the measures the district court adopted to cure

the misconduct; and (3) the certainty of conviction absent the improper statements. *See United*

*States v. Melendez*, 57 F.3d 238, 241 (2d Cir. 1995). "When defense counsel has failed even to

[bring the matter to the judge's attention], an appellate court will reverse only if the summation

was so extremely inflammatory and prejudicial that allowing the verdict to stand would seriously

13

affect the fairness, integrity or public reputation of judicial proceedings." *United States v.*

*Briggs*, 457 F.2d 908, 912 (2d Cir. 1972) (citations omitted) (internal quotation marks omitted).

In this case, the comments were not severe, there was no objection to the comments, and

the comments had very little to do with the ultimate conviction. In *United States v. Burden*,

600 F.3d 204 (2d Cir. 2010), a racketeering case, the Government compared the trial defendants

to Al Qaeda. *See id.* at 221. Nevertheless, we concluded that there was no prejudice in spite of

the Government's blatant and improper ploy to evoke images of terrorists so soon after the

attacks of September 11, 2001:

> The inept remarks were limited to the paragraph quoted above. The defense
> objection was prompt and the prosecutor abandoned the analogy upon being
> directed by the district court to move on. The district court instructed the jury that
> the closing arguments were not evidence, and we have no difficulty in concluding
> that the jury would have reached its guilty verdicts if the remarks had never been
> made. The district court did not err in refusing to grant a mistrial and the
> defendants' due process rights were not violated.

*Id.* at 222. The instant case presents facts far less egregious. We therefore conclude that there

was no due process violation and that the district court did not commit plain error in allowing the

Government to make the statements it did.

G.      The district court's charge on direct and circumstantial evidence

Ballard next argues, for the first time on appeal, that the district court erred by charging

that direct evidence proved the crime directly and that circumstantial evidence tended to prove

the existence or non-existence of other facts. There is no merit to this contention. Having

reviewed the jury instructions, we conclude that they were well within the mainstream as to the

definitions of direct and circumstantial evidence. The district court defined "direct evidence" as

14

"evidence that proves a disputed fact directly." Black's Law Dictionary defines "direct evidence" as, *inter alia*: "Evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." Black's Law Dictionary (8th ed. 2004). We see no meaningful difference. The district court's definition of "circumstantial evidence" was evidence "that tends to prove a disputed fact by proof of other facts. . . . Using your reason and experience, you infer from establish [sic] facts the existence or the nonexistence of some other fact." Black's defines "circumstantial evidence" as, *inter alia*: "Evidence based on inference and not on personal knowledge or observation." Black's Law Dictionary (8th ed. 2004). Again, we see no meaningful difference.

The district court's jury instructions regarding direct and circumstantial evidence were sound and Ballard's claims must be rejected. *See United States v. Sabhnani*, 599 F.3d 215, 237 (2d Cir. 2010) ("A defendant challenging a jury instruction as erroneous must show both error and ensuing prejudice.") (internal quotation marks omitted).

H.    Ineffective assistance of counsel

Ballard next claims that, due to his trial counsel's failure to object or otherwise move the court for relief, as detailed above, he received ineffective assistance of counsel. He asserts additionally that trial counsel was deficient for: (1) failing to object to the introduction, without redaction, of his telephone calls made from prison; (2) stipulating that he was charged with a robbery that was ultimately not included in the Indictment; (3) waiving cross-examination of a witness on a certain point; and (4) failing to investigate and produce certain defense witnesses.

In light of our "baseline aversion to resolving ineffectiveness claims on direct review,"

*United States v. Salameh*, 152 F.3d 88, 161 (2d Cir. 1998), and the Supreme Court's statement that "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective-assistance," *Massaro v. United States*, 538 U.S. 500, 504 (2003), we decline to review Ballard's claim of ineffective assistance of counsel on the record now before us. He may pursue this claim in a section 2255 petition. *See United States v. Deandrade*, 600 F.3d 115, 121 (2d Cir. 2010).

I.      Constitutionality of Ballard's sentence

Finally, Ballard argues that his sentence of 601 months' imprisonment was unconstitutional and violated the Supreme Court's ruling in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), our ruling in *United States v. Whitley*, 529 F.3d 150 (2d Cir. 2008), and the Eighth Amendment of the United States Constitution. He also argues that the sentence constituted an unconstitutional abuse of prosecutorial discretion. His claims lack merit.

The district court was clearly conflicted by the sentence it gave to Ballard. The court opened its opinion and order denying Ballard's motion for re-sentencing by stating, "The distorting effects of mandatory minimum sentences are never more evident than in the case of defendant Zachary Ballard," *United States v. Ballard*, 599 F. Supp. 2d 539, 539 (S.D.N.Y. 2009), and closed by stating, "When the letter of the law so far departs from justice as to become the instrument of brutality, common sense should call a halt," *id.* at 543. We are not unsympathetic to the concerns raised below. That said, we see no error in the sentence as it complied precisely with Title 18 and the law of this circuit.

16

Ballard's *Apprendi* claim is misplaced. *Apprendi* held that any fact other than the fact of a prior conviction that increases the penalty for a crime beyond the prescribed statutory maximum is required to be submitted to a jury and proved beyond a reasonable doubt. *See Apprendi*, 530 U.S. at 490. Ballard, however, merely reiterates his section 924(c) argument, to wit, that the jury should have been charged with the definition of the word "firearm." This does not involve increasing the sentence, post-conviction, beyond the statutory maximum. In any event, we have rejected that argument and consequently find that Ballard's purported *Apprendi* claim lacks merit.

Ballard's *Whitley* claims similarly lacks merit. The district court accurately characterized our holding in *Whitley* and the application of 18 U.S.C. § 924(c)(1)(A)'s "except clause." *See Ballard*, 599 F. Supp. 2d at 541-42. The effect of the "except clause" was to remove from the sentence calculation the seven-year sentence provided by the statute for Ballard's first section 924(c) conviction. *See* 18 U.S.C. § 924(c)(1)(A)(ii). However, Ballard was still subject to a term of imprisonment of twenty-five years each on the second and third counts under section 924(c), *see id.* § 924(c)(1)(C)(i), and the statute's stacking provision applied, causing Ballard's two twenty-five year sentences to run consecutively, *see id.* § 924(c)(1)(D)(ii). As the district court stated, "the statute does not prohibit the stacking of consecutive mandatory minimum sentences pursuant to [subsection 924(c)(1)(C)], and nothing in *Whitley* indicates that the statute can be read to forbid the imposition of a second consecutive 25-year minimum sentence for a separate conviction." *Ballard*, 599 F. Supp. 2d at 541-42. We agree and conclude that there was no *Whitley* violation. *See, e.g.*, *United States v. Campbell*, 300 F.3d 202, 212 (2d Cir. 2002)

17

(citing *Deal v. United States*, 508 U.S. 129, 131-32 (1993), and ruling that it was proper to treat appellant's conviction on first count as first conviction and his convictions on other six counts as second or subsequent convictions).

Ballard's Eighth Amendment claim was not raised in the district court and is therefore forfeited. *See United States v. Rivera*, 546 F.3d 245, 254 (2d Cir. 2008) ("There is no reason why [the defendant's] constitutional challenges could not have been raised below, where he had ample opportunity to raise them and where the district court would have had the opportunity to address them.") (citing *United States v. Feliciano*, 223 F.3d 102, 125 (2d Cir. 2000)). In any event, the Cruel and Unusual Punishment Clause "forbids only extreme sentences that are grossly disproportionate to the crime, and, with the exception of capital punishment cases, successful Eighth Amendment challenges to the proportionality of a sentence have been exceedingly rare." *United States v. Yousef*, 327 F.3d 56, 163 (2d Cir. 2003) (citations omitted) (internal quotation marks omitted).

While there is no question that Ballard's sentence is lengthy, we conclude that it was not "grossly disproportionate" or unreasonable. "Lengthy prison sentences, even those that exceed any conceivable life expectancy of a convicted defendant, do not violate the Eighth Amendment's prohibition against cruel and unusual punishment when based on a proper application of the Sentencing Guidelines or statutorily mandated consecutive terms." *Id.*; *see also United States v. Huerta*, 878 F.2d 89, 94 (2d Cir. 1989) ("Congress may constitutionally prescribe mandatory sentences or otherwise constrain the exercise of judicial discretion so long as such constraints have a rational basis." (citations omitted)). In this case, Ballard was

convicted of a series of robberies in which he brandished a firearm and threatened innocent people.  The penalties Congress has mandated for these crimes of violence reflect a judgment that perpetrators of this sort ought to be dealt with harshly.  We see no constitutional error in giving Ballard the penalties that the statute provides.

Ballard also argues that his sentence was the result of prosecutorial manipulation and had nothing to do with the retributive or deterrent goals of sentencing.  There is no merit to this argument.  "[T]he decision as to whether to prosecute generally rests within the broad discretion of the prosecutor, and a prosecutor's pretrial charging decision is presumed legitimate."  *United States v. Sanders*, 211 F.3d 711, 716 (2d Cir.), *cert. denied*, 531 U.S. 1015 (2000) (citations omitted) (internal quotation marks omitted).  Nonetheless, "a prosecution brought with vindictive motive, penalizing those who choose to exercise constitutional rights, would be patently unconstitutional."  *Id.* (internal quotation marks omitted).  We will dismiss an indictment if actual vindictiveness has been demonstrated, or if, under the circumstances, "there is a presumption of vindictiveness that has not been rebutted by objective evidence justifying the prosecutor's action."  *Id.* (internal quotation marks omitted).  In this case, we see no such vindictive motive.  On the contrary, the Government never threatened to *increase* the charges against Ballard to induce him to plead guilty; rather, there were offers to *drop* certain charges in the pre-trial pleading and the post-trial sentencing offers.  We see nothing vindictive in the Government's actions and, therefore, conclude that Ballard's claim has no merit.

\*     \*     \*     \*

19

We have carefully reviewed the remainder of Ballard's arguments and find them to be without merit.  Accordingly, the judgment of the district court is **AFFIRMED**.


FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk