08-5506-cr
United States v. Bell

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term 2009

(Argued: October 7, 2009                                        Decided: October 20, 2009)

Docket No. 08-5506-cr

UNITED STATES OF AMERICA,

*Appellant*,

v.

JOHN W. BELL, JR.,

*Defendant-Appellee.*[*]


Before: MINER and CABRANES, *Circuit Judges,* RAKOFF, *District Judge.*[**]

Appellant United States of America appeals from an October 23, 2008 order of the District Court (Alfred V. Covello, *Judge*) granting defendant-appellee John W. Bell, Jr., a new trial after a jury found defendant guilty of (1) attempted murder of a federal officer in violation of 18 U.S.C. § 1114, (2) assaulting, resisting, opposing, impeding or interfering with a federal officer, in violation of 18 U.S.C. § 111(a)(1), (b), and (3) discharging a firearm in connection with these crimes in violation of 18 U.S.C. § 924(c)(1)(A)(iii). After receiving authorization to appeal from the Solicitor General of the United States, the government filed a timely notice of appeal. We hold that the District Court erred in ordering a new trial because (1) the District Court's jury instructions on intentional conduct were legally correct and did not constitute plain error warranting a new trial, (2) the District Court's use of a general verdict form was not plain error and thus not a basis for ordering a new trial, (3) the District Court rested its decision to grant a new trial on clearly erroneous factual findings, and (4) the District Court

---

[*] The Clerk of Court is directed to amend the official caption in this case to conform to the listing of the parties above.

[**] The Honorable Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

1

failed to evaluate the entire trial record in ruling on defendant's motion for a new trial. Accordingly, the District Court's order for a new trial is reversed and the case is remanded for sentencing.

TRACY LEE DAYTON, Assistant United States Attorney (Michael J. Gustafson, Assistant United States Attorney, *on the brief*, Nora R. Dannehy, Acting United States Attorney, William J. Nardini, Assistant United States Attorney, *of counsel*) Office of the United States Attorney for the District of Connecticut, CT, *for Appellant*.

JOHN R. GULASH, Gulash & Riccio, Bridgeport, CT, *for Appellee*.

PER CURIAM:

Appellant United States appeals from an October 23, 2008 order of the District Court (Alfred V. Covello, *Judge*) granting defendant-appellee John W. Bell, Jr., a new trial after a jury found Bell guilty of (1) attempted murder of a federal officer in violation of 18 U.S.C. § 1114, (2) assaulting, resisting, opposing, impeding or interfering with a federal officer, in violation of 18 U.S.C. § 111(a)(1), (b), and (3) discharging a firearm in connection with these crimes in violation of 18 U.S.C. § 924(c)(1)(A)(iii).

## BACKGROUND

In reviewing the government's appeal,

> we must view all of the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor. Where there are conflicts in the testimony, we must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses.

*United States v. Ware*, 577 F.3d 442, 447 (2d Cir. 2009) (citations omitted). We must uphold the conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We therefore describe the relevant facts below in the light most favorable to the government.

The charges against Bell stem from an altercation that took place on the evening of October 1, 2007, when members of a Federal Bureau of Investigation ("FBI") task force attempted to execute a search warrant at Buzz's Mobil in Bridgeport, Connecticut, as part of an investigation into a gambling "organization." FBI agents arrived at Buzz's Mobil in unmarked cars around 8:30 p.m. As they approached the station office, the agents saw one employee, Fidel Lemus, near the door. Special Agent Mark Grimm and Detective Kevin Hammel ("Hammel") saw a second person, defendant Bell, standing near the back of the office, to the right of a soda machine. Detective Hammel approached the office

2

with Detective Scott Murray ("Murray"), who had removed his gun from its holster, but held it slightly behind his leg and pointed at the ground. Murray was dressed in street clothes, gloves, and a baseball cap, as well as a bullet-resistant vest with "POLICE" written across the front and the back in large yellow letters, with a police badge clipped to the front of it. The other officers similarly wore street clothes and a jacket or vest with the same "POLICE" inscription across the front and back. As Hammel and Murray approached the office they announced, "police, police with a search warrant," and "police with a warrant" several times. J.A. 179-84, 627-28. Lieutenant Arthur Kohloff and Agent Grimm also approached the office from the right and to the rear of Murray and Hammel. The officers instructed Lemus to put his hands up, which Lemus did, and Murray patted down Lemus's clothing for weapons. As Murray placed Lemus in Kohloff's custody, he noticed defendant Bell standing inside the office.

Murray stepped into the office again stating, "police, police with a warrant, police with a search warrant." J.A. 186-87, 246-47. Hammel joined Murray in also announcing "police, police," at which point Bell turned toward the back of the office and started walking away from the officers. Hammel repeatedly yelled, "stop, police, police, stop," J.A. 631, 633, 635, and Murray began to follow Bell, repeating his statement, "police with a search warrant." J.A. 187-88. Bell stopped short of the door to a back room in the office and turned partially toward Murray and Hammel so that his left side faced the officers, J.A. 188, 633-35, and put his hand in his pocket on his right side, which was closer to the back wall. J.A. 190. Murray yelled, "get your hand out of your pocket," J.A. 188, but Bell did not comply. Murray stopped, standing face-to-face with Bell and saw that Bell had his coat around his right hand near his hip. Murray yelled, "show me your hand," and raised his gun to point it at Bell, who then pulled a gun out and pointed it at Murray. J.A. 190. In response, Murray yelled "gun" to alert his fellow officers, and dove to the left and fired his gun at least once, but possibly twice. J.A. 190-92, 259-60, 632-35. Defendant also fired his gun twice at Murray. J.A. 192, 235-36, 244, 635. Other officers fired in the direction of Bell as well.

The other officers called for assistance, took cover, and ultimately guided Murray out of his crouched hiding position. Bell remained barricaded in the back room for approximately ten minutes while the officers attempted to persuade him to put his gun down and exit the office. J.A. 638B, 659-60, 681. Bell first refused to emerge, insisting that he see a Bridgeport police officer in uniform. He finally left the office, though he was still carrying his gun. Upon being commanded to drop the gun, J.A. 638A, Bell finally placed it on the desk just inside the office door and walked into the parking lot. J.A. 24, 471-72, 476, 681-82, 695-96. The officers took Bell into custody and searched him, recovering ammunition, a gun permit, and $140 cash, among other things. Bell was taken to the hospital because he had been struck by a bullet in his wrist and in his upper arm.

3

A federal grand jury sitting in Bridgeport, Connecticut indicted Bell on four counts: (1) attempted murder of a federal officer; (2) attempted murder of a person assisting a federal officer, both in violation of 18 U.S.C. § 1114; (3) assaulting, resisting, opposing, impeding, or interfering with a federal officer, in violation of 18 U.S.C. § 111(a)(1), (b); and (4) discharging a firearm in connection with these crimes in violation of 18 U.S.C. § 924(c)(1)(A)(iii).

During the trial, the government called six of the nine members of the search warrant team. Bell testified on his own behalf, stating that he fired his gun at the officers in self-defense. J.A. 675-747. Bell was cross-examined as to his ownership of multiple firearms and his involvement, if any, with the gambling operation at his place of employment, and he in turn presented character evidence of his nonviolence. J.A. 749-54. After closing arguments, the District Court instructed the jury on the charges alleged and on the law of self-defense, which included an uncontested definition of "intentional" action. Bell agreed to the general verdict form provided by the District Court and the jury began its deliberations. After a short time, the jury convicted defendant of counts (1), (3), and (4), and acquitted him of count (2), attempted murder of a person assisting a federal officer.

Defendant moved for a judgment of acquittal or, in the alternative, for a new trial, under Rule 33 of the Federal Rules of Criminal Procedure, claiming that the verdicts were contrary to the weight of the evidence and that it would be a manifest injustice to allow the guilty verdicts to stand because he did not have the requisite intent. After hearing arguments on these motions, the District Court denied defendant's motion for acquittal but granted his motion for a new trial in its October 23, 2008 order. J.A. 950. The District Court based its order for a new trial on two legal mistakes that it identified *sua sponte*: a flawed definition of "intentional" conduct in the jury instructions, and the use of a general verdict form rather than a special form that would have addressed the specific elements of the charged offenses and the burdens of self-defense. The District Court also held that "there is not competent, satisfactory and sufficient evidence that proves beyond a reasonable doubt that the defendant did not act in [ ]self-defense" and made its own factual findings as to particular elements of the altercation between defendant and the officers. The government sought and was granted permission from the Solicitor General of the United States to appeal and filed a timely notice of appeal.

## DISCUSSION

We review a decision to grant a new trial for "abuse of discretion." *See, e.g.*, *United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001). "A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." *Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) (internal quotation marks, citation, and alteration omitted).

4

The issue on appeal is whether the District Court erred in ordering a new trial on the two legal errors it identified *sua sponte*, or on the basis of its factual findings that the evidence failed to prove that defendant did not act in self-defense.

The government maintains that the District Court erred in ordering a new trial because (1) the District Court's jury instructions on intentional conduct were legally correct and did not constitute plain error warranting a new trial, (2) the use of a general verdict form was not plain error and thus not a basis to order a new trial, (3) the District Court rested its decision to grant a new trial on clearly erroneous factual findings, and (4) the District Court failed to evaluate the entire trial record in ruling on defendant's motion for a new trial.

Defendant supports the District Court's justifications for ordering a new trial and also asserts the following alternative grounds for affirming the District Court's grant of a new trial: (1) the District Court failed to charge the jury on the subjective component of self-defense; (2) the Court improperly precluded defendant's inquiry into the bias, motive, and interest of the police insofar as it related to their potential civil and criminal liability; (3) the Court improperly admitted evidence of defendant's use and ownership of firearms and ammunition; and (4) the Court improperly admitted evidence of the gambling operation under investigation at Buzz's Mobile station.

It is well established that

> trial courts must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses. It is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment. Where testimony is patently incredible or defies physical realities, it may be rejected by the court, despite the jury's evaluation. But the trial judge's rejection of all or part of the testimony of a witness or witnesses does not automatically entitle a defendant to a new trial. The test is whether it would be a manifest injustice to let the guilty verdict stand.
>
> Manifest injustice cannot be found simply on the basis of the trial judge's determination that certain testimony is untruthful, unless the judge is prepared to answer "no" to the following question: "Am I satisfied that competent, satisfactory and sufficient evidence in this record supports the jury's finding that this defendant is guilty beyond a reasonable doubt?" In making this assessment, the judge must examine the totality of the case. All the facts and circumstances must be taken into account. An objective evaluation is required. There must be a real concern that an innocent person may have been convicted. It is only when it appears that an injustice has been done that there is a need for a new trial "in the interest of justice." Although a trial court has broader discretion to grant a new trial pursuant to Rule 33 [of the Federal Rules of Criminal

5

Procedure] than to grant a motion for a judgment of acquittal pursuant to [Rule] 29 [of the Federal Rules of Criminal Procedure], where the truth of the prosecution's evidence must be assumed, that discretion should be exercised sparingly.

*United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992) (internal quotation marks and citations omitted).

## A. The District Court's Jury Instructions and Use of a General Verdict Form

Because Bell failed to object to the jury instructions or to the District Court's use of a general verdict form, we review these claims on appeal under a "plain error" standard—that is, we will only grant relief if there was (1) error, (2) that is plain, and (3) affects substantial rights, and (4) the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Weintraub*, 273 F.3d 139, 145 (2d Cir. 2001) (internal quotation marks and alteration omitted). "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004) (internal quotation marks omitted). We will only vacate a conviction if, "viewing as a whole the charge actually given, [defendant] was prejudiced." *United States v. Dove*, 916 F.2d 41, 45 (2d Cir. 1990) (internal quotation marks omitted).

The District Court determined, *sua sponte*, that its definition of "intentional" in the jury charge was error warranting a new trial because the definition did not adequately distinguish intentional conduct from accidental or mistaken conduct. The instruction used at trial by the District Court was derived from *United States v. Townsend*, 987 F.2d 927 (2d Cir. 1993), in which we expressly suggested a charge for "intentionally" to be "used when appropriate," "in order to forestall such problems [of distinguishing conduct] in the future." *Id.* at 930. The District Court charged the jury with the suggested language, stating in relevant part: "defendant's act must have been the product of defendant's conscious objective *rather than* the product of a mistake or an accident." *Id.* (emphasis added) The District Court later insisted it should have used the words "were not" instead of "rather than" to communicate more adequately to the jury that it needed to find that defendant's acts were not an accident. We reject this finding of legal error. Not only did the District Court at trial use the very language of our relevant precedent (also found in L. Sand, et al., *Modern Federal Jury Instructions* (2004)), but it also repeatedly distinguished between these degrees of culpability throughout the entire charge, making it abundantly clear that the jury needed to find that defendant's actions were the product of intent rather than accident. The Court's jury charge was not error, much less plain error that could have prejudiced defendant sufficiently to warrant a new trial.

6

Nor can we conclude that the use of a general verdict form—also not contested by the parties—was error of any sort that could serve as the basis for ordering a new trial. The District Court, also *sua sponte*, posited that the jury should have been given a special verdict form to emphasize defendant's claim of self-defense. As it happens, there is a "historical preference for general verdicts," and a "traditional distaste for special interrogatories" in criminal cases, *United States v. Coonan*, 839 F.2d 886, 891 (2d Cir. 1988); *accord United States v. Ogando*, 968 F.2d 146, 148 (2d Cir. 1992), and, in any event, special interrogatories were also unnecessary in this particular case. The District Court more than adequately addressed the issue of self-defense and its importance for deliberation in his charge to the jury: "Because the charges on all four counts are based on a single set of events, if you find the Defendant acted in self-defense with respect to those events, that is, if you find that the Government has not proven beyond a reasonable doubt that the Defendant did not act in self-defense, then you must find the Defendant not guilty on all four counts. *For this reason it may be helpful for you to resolve this question at the outset [of] your deliberations*." J.A. 874 (emphasis added). The District Court's instructions were clear and called attention to the very issue that it later determined was not sufficiently emphasized. The use of a general verdict form was, therefore, not an error of any species (plain or otherwise), and did not warrant a new trial.

## B. District Court's Factual Findings that Defendant Acted in Self-Defense

The District Court also based its order for a new trial on its conclusion that "there is not competent, satisfactory and sufficient evidence that proves beyond a reasonable doubt that the defendant did not act in . . . self-defense." J.A. 964. Appellant argues that the District Court rested its decision to grant a new trial on clearly erroneous factual findings and failed to evaluate the entire trial record in doing so. The facts in this case raised many questions for the jury as to exactly what happened, when it occurred, and what each party perceived at the time of the altercation. These determinations turned almost entirely on matters of credibility. Even though the District Court interpreted the facts differently from the jury, "[i]t is only where *exceptional circumstances* can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment. Where testimony is *patently incredible or defies physical realities*, it may be rejected by the court, despite the jury's evaluation." *Sanchez*, 969 F.2d at 1414 (emphases added, citation omitted).

After reviewing the trial record, we cannot say that exceptional circumstances existed to justify overriding the jury's credibility determinations. Nor can we conclude that the evidence failed to substantiate the jury's finding that defendant did not act in self-defense. The determination of whether the defendant acted in self-defense heavily depended on credibility assessments. Among other evidence presented, the government offered testimony of the officers and evidence of what they were wearing in support of the argument that it was clear to defendant that he was shooting at a federal officer. The defendant himself testified that he thought he was being robbed, but he also stated multiple times while testifying: "I don't know who shot first." J.A. 707-12. Taken as a whole, the

7

testimony given at trial was not "patently incredible" and did not "defy physical realities." *Sanchez*, 969 F.2d at 1414.

The District Court made findings of fact on specific matters and did not appear to review the record as a whole. Even if the District Court had properly rejected "all or part of the testimony of a witness or witnesses[,] [that] does not automatically entitle [the] defendant to a new trial. The test is whether it would be a manifest injustice to let the guilty verdict stand." *Id.* (internal quotation marks and citation omitted). It is not clear from this record that it would be a "manifest injustice to let the guilty verdict stand," as the District Court insisted when it ordered a new trial. Although the District Court has discretion to order a new trial in extraordinary circumstances, we cannot say that its decision to do so was reasonable in the circumstances presented here or on the record viewed as a whole.

## C. Alternative Grounds for Ordering a New Trial

Defendant argues that the District Court's grant of a new trial should be affirmed on the following alternative grounds: the District Court erred when it (1) did not adopt defendant's proposed charge on the subjective component of self-defense, (2) precluded defendant from inquiring into the bias, motive, and interest of the police insofar as it related to their potential civil and criminal liability, (3) improperly admitted evidence of defendant's use and ownership of firearms and ammunition, and (4) improperly admitted evidence of the gambling operation under investigation at defendant's place of employment—the scene of the altercation.

### 1. Jury Instructions and Cross-Examination of Government Witnesses

We hold that the District Court did not err in its instructions to the jury on self-defense because, as also discussed above, we cannot say that "viewing as a whole the charge actually given, [defendant] was prejudiced." *Dove*, 916 F.2d at 45.

We also find no error in the District Court's exercise of discretion in monitoring cross-examination of the FBI agents. "Only when [the trial court's] broad discretion is abused will we reverse a trial court's decision to restrict cross-examination." *United States v. Crowley*, 318 F.3d 401, 417 (2d Cir. 2003) (internal quotation marks omitted). Defendant was permitted to ask Agent Mark Lauer about whether the shooting altercation was likely to become a subject of an investigation and the appropriateness of the officers' actions. J.A. 127-28, 131-32. Defendant was also allowed to ask Detective Murray whether he knew that the shooting would be investigated, about the possibility of facing criminal charges, and about the fact that investigation had commenced. J.A. 216. The only limitations placed on defendant related to his cross-examination on other questions already "asked and answered," and the arrests of officers in other instances, which are irrelevant. J.A. 217.

8

### 2. Evidentiary Rulings on Evidence of Firearm Possession and Gambling

Finally, we find no error in the District Court's admission of evidence of defendant's firearm possession and knowledge of the gambling operation at his place of employment. We review a district court's ruling to admit or exclude evidence under a deferential "abuse of discretion" standard, and "will reverse [a district court] only where a ruling to admit or exclude evidence is manifestly erroneous." *See United States v. Samet*, 466 F.3d 251, 254 (2d Cir. 2006) (internal quotation marks omitted). Defendants must also show that any error in admitting the challenged evidence was not harmless error. An error is harmless "if the appellate court can conclude with fair assurance that the improperly admitted evidence did not substantially influence the jury." *Hynes v. Coughlin*, 79 F.3d 285, 291 (2d Cir. 1996). Even assuming that the challenged testimony was improperly admitted,

> [w]e will [nevertheless] not grant a new trial unless we find that the introduction of inadmissible evidence was a clear abuse of discretion and was so clearly prejudicial to the outcome of the trial that we are convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice. We measure prejudice by assessing error in light of the record as a whole.

*Phillips v. Bowen*, 278 F.3d 103, 111 (2d Cir. 2002) (internal quotation marks and citation omitted). We cannot say that the challenged testimony yielded a "seriously erroneous" result in the finding of liability here. Accordingly, we conclude that the District Court did not err in admitting the contested evidence. We have considered defendant's other arguments and find them to be without merit.

### CONCLUSION

In sum, we hold that the District Court erred in ordering a new trial because (1) the District Court's jury instructions on intentional conduct were legally correct and did not constitute error, much less plain error, warranting a new trial; (2) the District Court's use of a general verdict form was not error, plain or otherwise, and thus not a basis to order a new trial; (3) the District Court rested its decision to grant a new trial on clearly erroneous factual findings; (4) the District Court failed to evaluate the entire trial record in ruling on defendant's motion for a new trial; and (5) there are no alternative grounds on which we can affirm the District Court's order.

Accordingly, we REVERSE the order of the District Court and REMAND for sentencing purposes only.