12-1269
*In re Ames Dep't Stores, Inc.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 26th day of December, two thousand twelve.

PRESENT:

PIERRE N. LEVAL,
DEBRA ANN LIVINGSTON,
DENNY CHIN,

*Circuit Judges.*
_____

IN RE AMES DEPARTMENT STORES, INC., et al.,

*Debtors.*
_____

CELLMARK PAPER INCORPORATED,

*Creditor-Appellant*,

-v.-                                    No. 12-1269-bk

AMES MERCHANDISING CORPORATION,

*Debtor-Appellee.*[*]
_____

─────────────────────────────────────────────

[*]The Clerk of the Court is directed to amend the official caption to conform to the above.

1

IRVE J. GOLDMAN, Pullman & Comley, LLC, Bridgeport, CT, *for Creditor-Appellant*.

BIJAN AMINI (Avery Samet, *on the brief*), Storch Amini & Munves PC, New York, NY, *for Debtor-Appellee*.

**UPON DUE CONSIDERATION**, it is hereby **ORDERED, ADJUDGED**, and **DECREED** that the order of the district court is **AFFIRMED**.

Creditor-Appellant Cellmark Paper Inc. ("Cellmark"), appeals from a February 28, 2012 order of the United States District Court for the Southern District of New York (Koeltl, *J.*) affirming the March 28, 2011 order of the United States Bankruptcy Court for the Southern District of New York (Gerber, *Bankr. J.*), which avoided and recovered three transfers between it and Debtor-Appellee Ames Merchandising Corporation ("Ames") worth a total of $1,899,970.73. We assume the parties' familiarity with the underlying facts and procedural history of the case, which we reference only as necessary to explain our decision.

The Bankruptcy Code permits bankruptcy estates to recover preferential transfers, or "preferences," made between the debtor and its creditors before the debtor files a bankruptcy petition. 11 U.S.C. §§ 547, 550. To be avoidable a preference must, among other things, have been made while the debtor was insolvent. *Id.* § 547(b)(3). There is a rebuttable presumption that the debtor was insolvent during the ninety days preceding the filing of its bankruptcy petition. *Id.* § 547(f); *Lawson v. Ford Motor Co. (In re Roblin Indus., Inc.)*, 78 F.3d 30, 34 (2d Cir. 1996). Even if the requirements for avoidability are met, however, the creditor may still be entitled to a defense listed in 11 U.S.C. § 547(c). One such defense is the "ordinary course" defense which, under the law at the time the transfers in this case took place, required a creditor to establish that a preferential transfer was (1) to pay a debt incurred by the debtor in the ordinary course of business of it and the

2

transferee, (2) made in the ordinary course of business of both the debtor and transferee, and (3) made according to ordinary business terms. 11 U.S.C. § 547(c)(2) (2000).[2] It is the transferee's burden to prove that such a defense applies. 11 U.S.C. § 547(g) (2006).

At issue in this case are three payments that Ames made to Cellmark for previously received paper shipments. Ames made the first payment on August 8, 2001 to pay off $700,000 of a $1,390,690.52 Cellmark invoice that was due on August 2, 2001. Ames made the second payment on August 10, 2001 to pay off the rest of that invoice. Ames made the third payment on August 13, 2001 to pay off three separate Cellmark invoices that together were worth a total of $764,918.81. Two of those three invoices, respectively worth $390,814 and $118,466.21, were scheduled to become due on August 15 and 16, 2001, one and two days after payment was made. Ames filed for bankruptcy on August 20, 2011.

1. Presumption of Insolvency

Cellmark first argues that the bankruptcy court erred in holding that Cellmark failed to rebut the presumption of Ames's insolvency. To rebut a presumption of insolvency, a creditor must introduce "some evidence that the debtor was not in fact insolvent at the time of the transfer." *In re Roblin*, 78 F.3d at 34. Because insolvency is a question of fact, we review the bankruptcy court's findings for clear error. *Id.* at 35. "The Bankruptcy Court has broad discretion when considering evidence to support a finding of insolvency." *Id.*

---

[2] Congress amended 11 U.S.C. § 547(c)(2) in 2005 so that a transferee need only establish that a transfer was either made in the ordinary course of business of the debtor and transferee *or* made according to ordinary business terms. *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 § 409, 119 Stat. 23. The amendment only applies to cases filed after October 17, 2005. *Id.* § 1501(b)(1).

The bankruptcy court did not clearly err by concluding that Cellmark failed to submit evidence sufficient to rebut the presumption of Ames's insolvency. As the bankruptcy court noted, evidence of the book value of Ames's assets, without more, is ordinarily insufficient to establish solvency under the Code, which is a concept based on the fair market value of the debtor's assets. *See Roblin*, 78 F.3d at 35–36 (citing 11 U.S.C. § 101(32)). Book value may be relevant in determining fair market value, *see id.* at 36, but it does not compel the fact finder to draw an inference of solvency. Thus, it was not clearly erroneous for the bankruptcy court to conclude that the book value, along with other evidence cited by Cellmark in its brief—which consists of nothing more than statements by Ames executives about their expectations for the company once it exited Chapter 11 bankruptcy—was insufficient to support a reasonable finding of Ames's solvency at the time of the transfers to overcome the presumption. *See ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 149 (2d Cir. 2007).

2. Ordinary Course of Business Defense

Cellmark also argues that even if Ames was insolvent at the time the transfers were made, the transfers are still shielded by the ordinary course of business defense under 11 U.S.C. § 547(c)(2). Specifically, Cellmark contests the bankruptcy court's finding that the transfers were not made in the ordinary course of the companies' dealings. To the extent that the bankruptcy court's relevant findings on this issue were findings of fact, we review them for clear error. *See Babitt v. Vebeliunas (In re Vebeliunas)*, 332 F.3d 85, 90 (2d Cir. 2003).

The bankruptcy court noted a number of aspects of Ames's and Cellmark's prior course of dealings that distinguished the three transfers at issue. Ames had not previously made partial payments on an invoice, issued a lump sum check for several invoices, or paid an invoice early.

4

Moreover, the invoice due August 2, unlike other invoices from Cellmark, was manually prepared and out of numerical order. The bankruptcy court considered Cellmark's explanations for these differences and found them to be either unpersuasive or not credible. Based on the record, we cannot say that the court's factual findings were clearly erroneous. And based on these findings, the bankruptcy court did not err in concluding that Cellmark failed to establish that the transfers at issue took place in the ordinary course of business between it and Ames.

          3. Presentation of Additional Evidence

Cellmark next argues that the bankruptcy court erred in denying it the opportunity to proffer further testimony from one of its employees about the manual preparation of its invoices. Cellmark employee Trevor Spain testified that he had manually generated the first invoice at issue in this case because Cellmark's automated payment system could not generate one invoice for paper provided by multiple manufacturers. On cross-examination, however, he admitted that he had failed to consolidate multiple orders for Ames into a single invoice in the past. Cellmark submitted an offer of proof for further testimony from Spain in a post-trial motion.

A trial court has "wide discretion in determining whether to permit evidence on rebuttal," *United States v. Tejada*, 956 F.2d 1256, 1266 (2d Cir. 1992), and we will not overturn a trial court's decision to admit or exclude evidence unless it is "manifestly erroneous," *United States v. Bell*, 584 F.3d 478, 486 (2d Cir. 2009) (per curiam) (internal quotation marks omitted). We cannot say that the bankruptcy court's decision not to admit further testimony from Spain was manifestly erroneous. Cellmark's post-trial offer of proof contained no indication that Spain's further testimony would have provided a more compelling explanation for why the first invoice was manually generated. The only new evidence offered concerned post-petition invoices, which the bankruptcy court found both

irrelevant and of questionable veracity. It was thus well within the court's discretion to not allow additional testimony in rebuttal.

4. <u>Motion for a New Trial</u>

Finally, Cellmark argues that the bankruptcy court erred in refusing to grant its motion for a new trial. The sole basis of that motion was newly discovered testimony of another witness, Thomas Powell, which Cellmark claimed corroborated the testimony of Spain. A court's decision to deny a motion for a new trial is reviewed for abuse of discretion. *United States ex rel. Feldman v. van Gorp*, 697 F.3d 78, 93 (2d Cir. 2012).

The bankruptcy court did not abuse its discretion in denying Cellmark's motion for a new trial. Even assuming that Powell's testimony at a new trial would corroborate Spain's testimony in certain respects, such corroboration would in no way call into question the adequacy of the bankruptcy court's factual findings in support of the conclusion that the invoice at issue was not in the ordinary course of business between Ames and Cellmark. Powell's affidavit did not contradict the bankruptcy court's finding that Cellmark had never before consolidated an invoice as it did during the preference period. Moreover, the bankruptcy court had other grounds for determining that the invoice and its payment were outside the ordinary course of dealing, including the manual override of Ames's automated payment system and Ames's partial payment of Cellmark's manually generated invoice.

We have reviewed Cellmark's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk