10-3677(L)
United States v. Jacques

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of February, two thousand fourteen.

PRESENT:  REENA RAGGI,
         DENNY CHIN,
         CHRISTOPHER F. DRONEY,
              *Circuit Judges*.

-----------------------------------------------------------------------

UNITED STATES OF AMERICA,

*Appellee*,

v.

GARY JACQUES, also known as PAPAI SHAMPOO, also known as RALPH, CESAR POLANCO, also known as PECHON, also known as "PATRONE," also known as PACHONG, also known as "PETION," ROBERT ALEXANDER GUERRERO, also known as AL, also known as ALEX,

*Defendants-Appellants*,

ANSY GUERRIER, also known as LUCKY, also known as ANDRE,

*Defendant*.

No. 10-3677(L)
No. 11-1083(CON)
No. 11-1099(CON)
No. 11-1146(CON)

1

------------------------------------------------------------------------
UNITED STATES OF AMERICA,

                        *Appellee*,

                v.                                          No. 11-1083

ROBERT GUERRERO,

                        *Defendant-Appellant*,

GARY JACQUES, ANSY GUERRIER, ALISON EDELMAN, MICHAEL MCENROE, LAWRENCE ALBERS, AL CASSIANO, JR., SANDRA SAM, RONY PHILIPPE EXANTUS, JOHANNY MENDEZ, VIANNEY DEL ROSARIO, VICTOR GUERRERO, JEFFREY JACQUES,

                        *Defendants.*\*
------------------------------------------------------------------------

APPEARING FOR APPELLANTS:      ROBERT J. BOYLE, New York, New York, *for Appellant Gary Jacques*.

                               MICHAEL O. HUESTON, ESQ., New York, New York, *for Appellant Robert Guerrero*.

                               Marjorie M. Smith, Piermont, New York, *for Appellant Cesar Polanco*.

APPEARING FOR APPELLEE:         PAUL TUCHMANN (Peter A. Norling, *on the brief*), Assistant United States Attorneys, *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, New York

Appeal from judgments of the United States District Court for the Eastern District of New York (Nina Gershon, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the appeal of Cesar Polanco from a judgment entered on September

---

\* The Clerk of Court is directed to amend the official caption as shown above.

1, 2010, is DISMISSED in part and the judgment is AFFIRMED in part, and that the judgments entered on March 8, 2011, with respect to Gary Jacques, and March 18, 2011, with respect to Robert Guerrero, are AFFIRMED.

Defendant Jacques stands convicted after trial of substantive and conspiratorial importation and possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii)(II), 846, 952(a), 960(b)(2)(B)(ii), 963. Defendant Guerrero stands convicted after a guilty plea on the same substantive and conspiratorial cocaine possession crimes.[1] On this appeal, Jacques charges the district court with various evidentiary and instructional errors at trial. Both men contend that their prison sentences—228 months for Jacques and 156 months for Guerrero—are infected by procedural error and are substantively unreasonable. Defendant Polanco, convicted after a guilty plea of conspiracy to possess with intent to distribute at least five kilograms of cocaine, see 21 U.S.C. §§ 841(b)(1)(A)(ii)(II), 846, filed a timely notice of appeal, but his attorney now moves to withdraw pursuant to Anders v. California, 386 U.S. 738 (1967), and the government moves to dismiss the appeal.

We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm Jacques's and Guerrero's judgments of conviction and to dismiss Polanco's appeal in part and otherwise to affirm his judgment of conviction.

---

[1] Both men also stand convicted after guilty pleas of conspiracy to commit wire fraud, but as they raise no appellate challenge to that part of the judgment, we do not address it further.

1.  Jacques's Trial Challenges

    a.  Evidentiary Rulings

        i.  *Miranda* Error

Jacques asserts that the district court admitted four statements the government obtained from him after he was advised of his rights and invoked his right to counsel, thereby violating Miranda v. Arizona, 384 U.S. 436 (1966). The first challenged statement pertained to Jacques's request for counsel: "Look, I want to talk to you guys, but I want Mike [his lawyer] present here because I want to know how much time it's going to take off my sentence." Trial Tr. 858:7–9, Jacques App. 188. The second statement was made in response to a government agent's inquiry as to who "Mike" was, to which Jacques replied, "Arbite," an attorney known to the agent. Id. 858:10–13, Jacques App. 188. The third statement reiterated Jacques's willingness to cooperate, but only with counsel present: "Look, I don't care. We can do this in the basement of the court house then. I'll talk to you in a private area, but I just want to have Mike there but I'll cooperate." Id. 858:17–20, Jacques App. 188. The final statement, made in response to an agent's inquiry as to whether "there [is] anything that we can do right now?", asked about making telephone calls from the agent's office and expressed Jacques's wish that he had been arrested a few days earlier before his children had gone to Haiti because "if the guys in Haiti find out that I'm the one who cooperated, then you know what time it is for my children." Id. 858:21–860:1, Jacques App. 188–89.

At the outset, we note that Jacques appears to have waived, or at least forfeited, any challenge he might have to the admission of these statements by failing to move for their suppression before trial according to the schedule set by the district court. See Fed. R. Crim. P. 12(e). That conclusion is particularly warranted where, as here, the district court allowed Jacques to file a belated motion to suppress statements during trial, and even granted the motion in part, but Jacques failed to include the statements he now challenges even in that belated filing. See United States v. Yousef, 327 F.3d 56, 125 (2d Cir. 2003) (declining to address merits of unpreserved suppression motion on appeal where defense raised "two other grounds for suppression" during pre-trial suppression proceedings).

Even if we were to review Jacques's waived Miranda claim for plain error, however, Jacques would not be entitled to any relief. His first and third statements were not made in response to interrogation, but were volunteered and, thus, "not barred by the Fifth Amendment." Miranda v. Arizona, 384 U.S. at 478; see Edwards v. Arizona, 451 U.S. 477, 484–85 (1981) (holding that accused who has expressed "desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police" (emphasis added)). Although Jacques's second statement was in response to a police inquiry, Miranda concerns do not arise with respect to such a question because it "'does nothing more than seek clarification of what the defendant has already volunteered.'" United States v. Rommy, 506 F.3d 108, 132–33 (2d Cir. 2007) (quoting 2 LaFave et al., Criminal Procedure

5

§ 6.7(d), at 567 (2d ed. 1999)). Thus, the only statement whose admission appears to have violated Miranda is the last. As the government concedes, Campaneria v. Reid, 891 F.2d 1014, 1021–22 (2d Cir. 1989), holds that once a defendant has invoked the right to counsel, police statements aimed at changing a defendant's mind on that subject violate Miranda, rendering statements elicited thereby inadmissible.

But even if the admission of the fourth statement satisfied the first two prongs of plain error analysis, i.e., error that is clear or obvious rather than subject to reasonable dispute, it cannot satisfy the final two prongs, i.e., error affecting the outcome of the trial and seriously affecting the fairness, integrity, or public reputation of judicial proceedings. See United States v. Marcus, 130 S. Ct. 2159, 2164 (2010); United States v. Agrawal, 726 F.3d 235, 250 (2d Cir. 2013). This is because the other, admissible evidence of Jacques's culpability, including other admissions made by him, so overwhelmingly established guilt as to leave us with no doubt that the statement about making telephone calls and the risk to Jacques's children did not affect the outcome of the trial. See United States v. Rommy, 506 F.3d at 136 (concluding any erroneous admission of defendant's statement was "plainly harmless in light of other overwhelming evidence of guilt").

Accordingly, we conclude that Jacques's Miranda challenge warrants no relief.

ii. Discretionary Rulings

We review Jacques's three other evidentiary challenges only for abuse of discretion, which is not evident here. See United States v. Bell, 584 F.3d 478, 486 (2d Cir. 2009).

6

First, although Jacques complains that re-direct examination of witness Paul Lilavois about filings in another case in which he was already sentenced impermissibly insinuated to the jury that the sentencing judge had found the witness to be cooperative and truthful, the district court adequately ensured against that possibility by instructing the jury that Lilavois's testimony about the filings could only be considered for its description of his prior illegal activities. See United States v. Spinelli, 551 F.3d 159, 168–69 (2d Cir. 2008) (cautioning against eliciting reason for cooperator's sentence, but identifying no error where evidence before the jury did not reveal sentencing judge's reasons). Courts assume that juries follow limiting instructions, and this case presents us with no reason to think otherwise. See Greer v. Miller, 483 U.S. 756, 766 n.8 (1987); see also United States v. Cadet, 664 F.3d 27, 33 (2d Cir. 2011) (presuming that jury followed instruction to consider evidence only for permissible purpose). Thus, the district court did not abuse its discretion in denying Jacques's motion for a mistrial. See United States v. Deandrade, 600 F.3d 115, 118 (2d Cir. 2010).

Second, insofar as the government attempted to elicit hearsay testimony from a federal agent to explain an inconsistency between his testimony and that of cooperating witness Wilfredo Guerrero, the district court acted well within its discretion in ensuring against prejudice by instructing the jury to disregard that testimony entirely. See United States v. Mussaleen, 35 F.3d 692, 695 (2d Cir. 1994).

Third, evidence of Jacques's drug trafficking in Turks and Caicos reasonably fell within the charged conspiracies and, thus, reflects no evidentiary error. See United States

7

v. Baez, 349 F.3d 90, 93 (2d Cir. 2003) ("[W]here . . . a conspiracy is charged, uncharged acts may be admissible as direct evidence of the conspiracy itself." (internal quotation marks omitted)).

Accordingly, Jacques fails to show any abuse of discretion in the district court's evidentiary rulings.

b.      Charging Challenge

Jacques submits that the district court erred in charging the jury that if it found that he fled the United States after he believed he was about to be charged with one of the crimes for which he was standing trial, the jury could—but was not required to—infer defendant's consciousness of guilt.  While we usually review a preserved charging challenge de novo to determine if the charge as a whole indicates prejudicial error, see United States v. Ghailani, 733 F.3d 29, 52 (2d Cir. 2013), we accord considerable deference to trial court decisions to instruct on "drawing an inference of a guilty mind from flight," United States v. Mundy, 539 F.3d 154, 156 (2d Cir. 2008), provided there is "a satisfactory factual predicate" from which a reasonable jury could draw the inference, United States v. Al-Sadawi, 432 F.3d 419, 424 (2d Cir. 2005).

Jacques submits that the record here did not admit a predicate of flight because no warrant had been publicly issued and the evidence did not otherwise show that he knew he was about to be charged.  In fact, considerable evidence supported an inference of knowing flight.  A cooperating witness testified that on the same day that Lilavois was arrested at John F. Kennedy International Airport for possession of cocaine that Jacques

8

had paid him to transport, Jacques told the witness of the arrest, his plan to speak with a lawyer, and his intent to leave the United States—which he did. That same day, Jacques made veiled threats to Lilavois that implied Jacques knew that Lilavois had been arrested and was cooperating with authorities. Further, upon Jacques's return to this country in July 2008, he told a federal agent that living as a fugitive "wears you down." Trial Tr. 851:1–2, Jacques App. 181. This evidence, by itself, would permit a jury to infer that Jacques, with consciousness of his guilty involvement in a drug trafficking scheme of which Lilavois was only one participant, fled the United States immediately after Lilavois's arrest to avoid facing the very criminal charges for which he ultimately stood trial.

The fact that Jacques frequently traveled internationally for legitimate reasons and was likely unaware of the specific criminal charges that might be lodged against him did not detract from the established factual predicate for charging the jury on the inference of consciousness of guilt that could be drawn from flight. See United States v. Amuso, 21 F.3d 1251, 1258 (2d Cir. 1994) (holding that where evidence of flight passes "threshold inquiry of relevance, the accepted technique is for the judge to receive the evidence and permit the defendant to bring in evidence in denial or explanation" (internal quotation marks and alterations omitted)). Nor does United States v. Mundy warrant a different conclusion. There, we held only that a district judge did not err in declining to instruct the jury at one defendant's request about the flight of a co-defendant. 539 F.3d at 156. While we acknowledged in "dictum" that flight charges had "fallen into widespread

9

disfavor," and encouraged district courts, when presented with objections to requested flight charges, "to think carefully on whether any benefit from the giving of the charge would outweigh the potential harms," we also recognized that we had frequently ruled that the giving of such an instruction is "not error." Id. at 158. Here, there is no reason to think that the district court did not carefully consider its decision to give the challenged instruction or that it abused its discretion in doing so. Indeed, although Jacques explicitly waived any challenge to the substance of the charge by declining an invitation to submit alternative language, see generally United States v. Quinones, 511 F.3d 289, 320–21 (2d Cir. 2007) (discussing "true waiver" doctrine), we note that the charge is balanced in a way consistent with a leading treatise, see 1 L. Sand, et al., Modern Federal Jury Instructions—Criminal § 6.05 (2007), and previously sanctioned by this court, see United States v. Amuso, 21 F.3d at 1259.

Thus, we conclude that Jacques's charging challenge fails on the merits.

2.     Jacques's and Guerrero's Sentencing Challenges

We review defendants' sentences for "reasonableness," "a particularly deferential form of abuse-of-discretion review" that we apply both to the procedures used to arrive at the sentence and to the substantive length of the sentence. United States v. Cavera, 550 F.3d 180, 188 n.5 (2d Cir. 2008) (en banc); accord United States v. Broxmeyer, 699 F.3d 265, 278 (2d Cir. 2012).

10

a.   Procedural Challenges

i.   Jacques

Invoking Apprendi v. New Jersey, 530 U.S. 466 (2000), and Alleyne v. United States, 133 S. Ct. 2151 (2013), Jacques charges the district court with procedural error in finding him responsible for trafficking five to fifteen kilograms of cocaine for purposes of calculating his Sentencing Guidelines range when the trial jury convicted him only of participating in a conspiracy to traffic between 500 grams and five kilograms of cocaine. In any event, he argues that the district court's finding was clearly erroneous.

We need not reach the merits of Jacques's Apprendi/Alleyne argument because he expressly conceded below that the district court was authorized to determine drug quantity regardless of the jury's verdict.  See Sentencing Tr. 5:22–6:2, Jacques App. 383–84 ("I think, obviously, your Honor can find that [drug quantity] range by a preponderance. . . . I recognize your Honor has the authority to find that range."); see also United States v. Quinones, 511 F.3d at 320–21.  Even on plain error review, however, Jacques's Sixth Amendment challenge fails because the district court's drug quantity determination affected only the calculation of non-binding Guidelines, not a statutory minimum or maximum penalty.  The Supreme Court recognized as much in Alleyne, stating that the Sixth Amendment does not apply to "factfinding used to guide judicial discretion in selecting a punishment within limits fixed by law," even though "such findings of fact may lead judges to select sentences that are more severe than the ones they would have selected without those facts."  133 S. Ct. at 2161 n.2 (internal quotation marks and citation

omitted). This comports with our own earlier precedent in United States v. Vaughn, 430 F.3d 518, 528 (2d Cir. 2005) (Sotomayor, J.), which observed that "the Supreme Court made clear in Booker that when a judge sentences a defendant within the statutory range authorized by the jury verdict and uses advisory Guidelines to calculate that sentence, there is no Sixth Amendment violation."

Nor do we identify clear error in the district court's drug quantity finding given that court's discretion to credit the numerous cooperating witnesses who testified to Jacques's substantial involvement in narcotics conspiracies trafficking in even larger quantities of cocaine. See United States v. Nuzzo, 385 F.3d 109, 118 (2d Cir. 2004) ("[W]e owe a district court deference with respect to factual findings [at sentencing], especially those based on witness credibility.").

ii. Guerrero

Guerrero faults the district court for failing to afford him an evidentiary hearing to contest the Guidelines' enhancements for drug quantity, see U.S.S.G. § 2D1.1(c)(3), and leadership role, see id. § 3B1.1(a). "[I]t is well established that a district court need not hold an evidentiary hearing to resolve sentencing disputes, as long as the defendant is afforded some opportunity to rebut the Government's allegations." United States v. Broxmeyer, 699 F.3d at 280 (internal quotation marks omitted). Indeed, because a sentencing judge may rely on hearsay, the opportunity to submit documentary evidence and argument by counsel is typically sufficient. See id.

Although the record support for the challenged enhancements is ample, Guerrero submits that a hearing was necessary to allow him to attack the credibility of government witnesses who were the source of relevant information. We are not persuaded. At the district court's direction, the government disclosed the identities of informants who provided information as to drug quantity and role. The district court invited Guerrero to introduce any evidence, whether from Guerrero himself or otherwise, to dispute the witness's credibility generally or the specific information they provided. He adduced none. On this record, and in light of defense counsel's ability to argue credibility, we cannot conclude that the district court abused its discretion in not holding a hearing. See id.

Guerrero also raises an Apprendi/Alleyne challenge to the district court's role determination, which deprived him of eligibility for a below-mandatory-minimum sentence pursuant to the "safety valve" of 18 U.S.C. § 3553(f).[2] Because Guerrero did not lodge an Apprendi objection below, our review is limited to plain error, which we do not identify here. See United States v. Uddin, 551 F.3d 176, 181 (2d Cir. 2009).

Indeed, Alleyne lends no support to Guerrero's Apprendi argument because the Supreme Court there expressly stated that "the Sixth Amendment applies where a finding of fact both alters the legally prescribed range and does so in a way that aggravates the

---

[2] Insofar as Guerrero faults the district court for placing the burden on him to prove eligibility for safety valve relief, that argument, raised for the first time in a footnote, is not properly presented for our review. See United States v. Botti, 711 F.3d 299, 313 (2d Cir. 2013) (noting that settled appellate rule that issues adverted to in perfunctory manner are deemed waived applies with "particular force" to argument made "only in a footnote").

penalty." Alleyne v. United States, 133 S. Ct. at 2161 n.2 (emphasis in original). Thus, facts that increase a statutory mandatory minimum sentence must be determined by the jury beyond a reasonable doubt. See id. 2162–63. But the inverse does not follow; neither Apprendi nor Alleyne instructs that facts that prevent a defendant from avoiding the statutory minimum penalty authorized by the jury's verdict must also be found by the jury.

We drew this distinction in United States v. Holguin, 436 F.3d 111, 117 (2d Cir. 2006), which holds that "judicial fact-finding as to whether a defendant was a supervisor or leader (and thus barred from or entitled to safety valve relief) does not permit a higher maximum sentence to be imposed," but no Sixth Amendment concern arises where "the only effect of the judicial fact-finding is either to reduce a defendant's sentencing range or to leave the sentencing range alone, not to increase it." (original emphasis deleted). Thus, because judicial determination of Guerrero's role in the offense raised neither the applicable statutory minimum nor maximum penalty, his Sixth Amendment claim fails.

b.    Substantive Challenges

In challenging the substantive reasonableness of their sentences, defendants bear a heavy burden because we will set aside a district court's substantive determination only in exceptional cases where the trial court's decision "cannot be located within the range of permissible decisions," United States v. Cavera, 550 F.3d at 189 (internal quotation marks omitted), and we recognize that a broad range of sentences can be reasonable in a particular case, see United States v. Jones, 531 F.3d 163, 174 (2d Cir. 2008). Thus, we do not substitute our own judgment for that of the sentencing court; we ask only whether

14

challenged sentences are so "shockingly high, shockingly low, or otherwise unsupportable as a matter of law," that allowing them to stand would "damage the administration of justice." United States v. Rigas, 583 F.3d 108, 123 (2d Cir. 2009); accord United States v. Broxmeyer, 699 F.3d at 289. The sentences in this case raise no such concern.

          i.     Jacques

We focus first on Jacques's 228-month sentence, a downward departure from the low-end of his 235-293 month Guidelines range based on seven months' incarceration served in Turks and Caicos. This sentence cannot be deemed substantively unreasonable in light of Jacques's participation in schemes to import and possess multi-kilogram quantities of cocaine. Although Jacques protests the Guidelines' "over-emphasis on drug quantity," Jacques Br. 61, this does not detract from their validity. In any event, the crimes of conviction were aggravated by the fact that Jacques' participation spanned many years during which he played a leadership role. Moreover, when Jacques was charged with drug trafficking in Turks and Caicos, he jumped bail and continued to participate in the charged conspiracies while a fugitive. Further showing Jacques's disrespect for the law, he failed to abide by the terms of his home confinement while on bail awaiting trial, engaged in wire fraud in relation to a mortgage fraud scheme, and threatened two persons whom he suspected of cooperating in this case. Jacques may dispute the threat accounts but the district court found them credible, a matter well within its discretion. See United States v. Nuzzo, 385 F.3d at 118.

15

Insofar as Jacques emphasizes his positive characteristics, we have no reason to think they were overlooked by the district court, and we cannot conclude that they are so compelling as to take the sentence outside the permissible range available to the district court.

### ii. Guerrero

We reach the same conclusion with respect to Guerrero's total prison sentence of 156 months, a downward variance from his 168-210 month Guidelines range based on personal history and characteristics. While Guerrero contends that the district court should have accorded more mitigating weight to these factors, we cannot say that the district court's decision was so unreasonable in light of the totality of circumstances as to manifest an abuse of discretion. See United States v. Fernandez, 443 F.3d 19, 32 (2d Cir. 2006). Nor are we persuaded otherwise by Guerrero's assertions that the district court failed to consider his confinement conditions at the Metropolitan Detention Center or to heed 18 U.S.C. § 3553(a)(6)'s mandate to avoid unwarranted sentencing disparities.

Accordingly, we conclude that defendants' sentencing challenges fail on the merits.

### 3. Polanco

Counsel for defendant Polanco moves for permission to withdraw pursuant to Anders v. California, 386 U.S. 738 (1967), and the government moves to dismiss Polanco's appeal as barred by the waiver in his plea agreement. Upon due consideration, we conclude that the motion to withdraw as counsel should be granted, and the motion to dismiss should be granted with respect to Polanco's conviction and term of imprisonment,

16

and construed as a motion for summary affirmance with respect to the other components of Polanco's sentence, and as construed, also granted.

4.      Conclusion

We have considered defendants' remaining arguments and conclude that they are without merit.  We therefore AFFIRM the judgments of the district court as against Jacques and Guerrero, GRANT the motion to withdraw filed by counsel for Polanco, DISMISS Polanco's appeal of his conviction and term of imprisonment, and GRANT the government's motion for summary affirmance of Polanco's appeal from the other components of his sentence.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court